[Cite as *State v. Robinson-Bey*, 2018-Ohio-5224.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28740 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TERRENCE L. ROBINSON-BEY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2017 04 1221 |

DECISION AND JOURNAL ENTRY

Dated: December 26, 2018

TEODOSIO, Judge.

{¶1}     Defendant-Appellant, Terrence Robinson-Bey, appeals from his convictions in the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}     One afternoon, B.H. agreed to meet Mr. Robinson-Bey, her ex-boyfriend, at a store not far from her home.  She walked to the store and, when Mr. Robinson-Bey arrived, she got into his car.  The two rode around and conversed peaceably for some time.  When Mr. Robinson-Bey began asking about B.H.'s current boyfriend, however, she became uncomfortable.  She informed Mr. Robinson-Bey that his questions were inappropriate, and the two began arguing.  She then repeatedly asked Mr. Robinson-Bey to let her out of the car.  Each time she asked, he refused to stop.

{¶3}     As the car approached a four-way stop, B.H. decided that she would simply jump from the car when Mr. Robinson-Bey slowed.  She gathered her things and, as the car slowed,

she opened the door and jumped out. Her left leg was still inside the car when she heard a gunshot. Not realizing that she had been struck, she ran a moderate distance before she was forced to stop. She then looked down and saw a bullet wound in her leg. Before she could react, Mr. Robinson-Bey arrived on foot. With a gun held down to his side, he grabbed B.H. and walked her back to his car.

{¶4} Mr. Robinson-Bey kept B.H. in his car until later that evening. The two drove to various locations and, at one point, stopped at store to obtain peroxide for her leg. B.H. eventually convinced Mr. Robinson-Bey to take her to her cousin's house and managed to elude him once they were inside. After hiding for a brief period of time, she slipped outside, walked to a gas station, and called her boyfriend for help. Her boyfriend then took her to the hospital, where she received treatment for the gunshot wound to her leg.

{¶5} Mr. Robinson-Bey was indicted on charges of kidnapping, felonious assault, and having a weapon under disability. His kidnapping and felonious assault counts both carried a firearm specification and a repeat violent offender ("RVO") specification. To minimize the jury's exposure to his prior convictions, Mr. Robinson-Bey elected to try his RVO specifications to the bench. He also agreed to stipulate, for purposes of his weapon under disability count, that he had a prior conviction for a felony offense of violence. Both parties agreed that the jury would hear their stipulation, but would not receive a certified copy of Mr. Robinson-Bey's prior conviction.

{¶6} The trial commenced, and, near the conclusion of the State's case, the lead detective testified that Mr. Robinson-Bey had been "arrested for bank robbery a couple times." Mr. Robinson-Bey objected, and the court immediately sustained the objection, struck that testimony from the record, and issued a curative instruction. The parties then approached the

bench, and Mr. Robinson-Bey moved for a mistrial. After hearing arguments from both parties, the court denied the motion for a mistrial. It also denied the motion when Mr. Robinson-Bey renewed it at the close of the State's case.

{¶7} At the conclusion of trial, the parties presented their exhibits for admission. One of the State's exhibits was a copy of a certified conviction for armed bank robbery that Mr. Robinson-Bey committed in 1992. Another was a copy of his computerized criminal history ("CCH"), listing all of his arrests and convictions from 1981 to present. The parties agreed that neither of the foregoing exhibits (collectively, "the non-jury exhibits") would be presented to the jury. The certified conviction was admitted strictly for purposes of the record as the basis for the weapon under disability charge. Meanwhile, the CCH was admitted strictly for purposes of the court's decision on the RVO specifications. The court accepted both the non-jury exhibits as being offered for those limited purposes. In accordance with the parties' stipulation, it instructed the jury that Mr. Robinson-Bey had been convicted "of a felony offense of violence."

{¶8} The jury found Mr. Robinson-Bey not guilty of kidnapping, guilty of the lesser-included offense of abduction, and guilty of his remaining counts and firearm specifications. After the court excused the jury, the parties discovered that the non-jury exhibits had inadvertently been given to the jury along with the other exhibits. Mr. Robinson-Bey then filed a Crim.R. 29(C) motion for acquittal. In his motion, he argued that the State had set forth insufficient evidence, the non-jury exhibits had influenced the jury's decision, and, but for those exhibits, the jury would not have convicted him. The State filed a response in opposition to Mr. Robinson-Bey's motion.

{¶9} The court held a hearing on Mr. Robinson-Bey's motion. While the court acknowledged that the non-jury exhibits had inadvertently been given to the jury, it deemed the

error harmless. It also found that the State had presented sufficient evidence on each of Mr. Robinson-Bey's counts. Accordingly, it denied Mr. Robinson-Bey's motion. As to the RVO specifications, the court dismissed the one linked to the kidnapping count and found Mr. Robinson-Bey guilty of the remaining specification. The court sentenced him to a total of 18 years in prison.

{¶10} Mr. Robinson-Bey now appeals from his convictions and raises five assignments of error for our review. For ease of analysis, we rearrange several of the assignments of error.

II.

## ASSIGNMENT OF ERROR FIVE

THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT MR. ROBINSON-BEY'S CONVICTIONS.

{¶11} In his fifth assignment of error, Mr. Robinson-Bey argues that his convictions are based on insufficient evidence. We disagree.

{¶12} "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In analyzing the sufficiency of the State's evidence, this Court does not "resolve evidentiary conflicts or assess the credibility of witnesses[] because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶13} A person commits abduction if he knowingly, and without privilege to do so, commits either of the following acts:

(1) By force or threat, remove[s] another from the place where the other person is found; [or]

(2) By force or threat, restrain[s] the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear * * *.

R.C. 2905.02(A)(1), (2). A person commits felonious assault if he knowingly "[c]ause[s] or attempt[s] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). Finally, a person is guilty of having a weapon under disability if he has been convicted of "any felony offense of violence" and "knowingly acquire[s], [has], carr[ies], or use[s] any firearm or dangerous ordnance * * *." R.C. 2923.13(A)(2). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶14} Mr. Robinson-Bey argues that his convictions are based on insufficient evidence for two reasons. The first is that the State failed to set forth any evidence that the gun he allegedly used to shoot B.H. was operable. The second is that the State failed to set forth any evidence that he acted knowingly. He argues that the police never test-fired the gun they linked to his crimes and B.H. never saw him fire the gun. Because his alleged use of the gun formed the bases of his felonious assault charge, his weapon under disability charge, and his firearm specifications, he argues that those convictions must be reversed.

{¶15} B.H., the victim in this matter, testified that she and Mr. Robinson-Bey used to be romantically involved, but that she ended their relationship. One afternoon, she spoke with him on the phone and agreed to meet him at a neighborhood store. B.H. walked to the store and,

when Mr. Robinson-Bey arrived, got into his car. The two then drove around for some length of time, chatting about various topics.

{¶16} At some point, Mr. Robinson-Bey began asking B.H. about her new boyfriend. She indicated that she was uncomfortable with his questions, and the two began arguing. B.H. testified that she asked Mr. Robinson-Bey to let her out of the car several times, but he refused. When she saw that they were approaching a four-way stop in a residential area, she decided that she would simply jump out of the car. She held her purse, waited until the car slowed, and then opened the door to jump out.

{¶17} B.H. testified that her right leg was clear of the car, but her left leg was still partially inside when she heard a gunshot. She stated that she did not initially feel any pain, so she began running through the neighborhood. After about two blocks, however, her speed decreased and she found herself unable to continue. She then looked down at her left leg for the first time and saw a hole in her pants and blood. At that point, she realized that Mr. Robinson-Bey had shot her in the leg. She testified that, by the time she looked up, Mr. Robinson-Bey was there. He had a gun in his right hand and held it down to his side as he grabbed her and walked her back to his car.

{¶18} B.H. testified that she began rambling and making promises to Mr. Robinson-Bey because she was afraid he might kill her. She could no longer run because she was in a lot of pain, so she got into his car when he held the door open. The two continued to drive around, and B.H. expressed that she needed to go to the hospital. She testified that Mr. Robinson-Bey repeatedly refused to take her there, so she eventually suggested that they go to Family Dollar to buy peroxide. He agreed to do so, but did not get out of the car when they arrived. Instead, he called a stranger over to the car, gave the stranger money, and asked him to go inside the store

and buy the peroxide. The stranger obliged and, once Mr. Robinson-Bey had the peroxide in hand, he began driving around again.

{¶19} According to B.H., she ultimately convinced Mr. Robinson-Bey to drive her to her cousin's house, emphasizing that she needed to use the restroom. Though he relented, he did not want to let her out of the car when they arrived. B.H.'s cousin was having a birthday party, and Mr. Robinson-Bey believed that she would tell her family members what had happened once inside. B.H. then told Mr. Robinson-Bey to come inside with her so that she could just use the restroom.

{¶20} Once they were inside the house, Mr. Robinson-Bey followed B.H. everywhere with his gun in his pocket. Although her cousin saw her leg and B.H. indicated that Mr. Robinson-Bey had shot her, she testified that none of her family members took her seriously and believed that she had been struck by a B.B. Even so, several of them eventually confronted Mr. Robinson-Bey, and B.H. took that opportunity to elude him. She then hid in the basement for some time before leaving on foot.

{¶21} After leaving her cousin's house, B.H. walked to a gas station and called her boyfriend for help. She indicated that she did not call the police from her cousin's house or ask her family for help because she was not sure where Mr. Robinson-Bey had gone and believed he was still searching for her. Likewise, she never used her cell phone to call for help while in his car because she feared he would harm her if she tried. She later discovered that she had accidentally pocket-dialed her boyfriend while in the car with Mr. Robinson-Bey. She testified, however, that she never actually spoke with her boyfriend until she called him from the gas station. Once he came to the gas station, he took her to the hospital where she was treated for a

gunshot wound to her left leg. There was evidence that the bullet entered through the back of her leg and exited the front without striking any bones or major arteries.

{¶22} B.H.'s boyfriend testified that B.H. called him that evening, told him she had been shot, and asked him to pick her up from a gas station. He immediately drove there and, when he arrived, B.H. showed him her gunshot wound. She told him that she had been in Mr. Robinson-Bey's car, that he had refused to let her out, and that he had shot her. B.H.'s boyfriend then drove her to the hospital for treatment.

{¶23} B.H.'s boyfriend indicated that he had received a call from B.H.'s phone earlier in the day, but, when he answered, all he heard was "rustling, and a lot of scuffling and stuff like that." He stated that he could hear B.H.'s voice in the background, as well as a faint male voice. When he repeatedly called out to her, however, she would not respond. He ended the call after a few minutes and tried calling back, but there was no answer. Aware that B.H. had planned to be at home alone that day and concerned for her safety, he decided to call 911. He testified that he ultimately met a police officer at B.H.'s house and looked around, but no one was there. He then returned home and received B.H.'s call from the gas station later that evening.

{¶24} Officer Kevin Rybka spoke with B.H. at the hospital. B.H. told him that she had been riding in Mr. Robinson-Bey's car when they began to argue about her new boyfriend. She told him that Mr. Robinson-Bey would not let her out of the car, so she attempted to flee when they came to a stop sign. As she attempted to climb out, however, Mr. Robinson-Bey shot her in the leg, chased after her, and brought her back to the car. Consistent with her testimony, B.H. told Officer Rybka that Mr. Robinson-Bey continued to drive them around and eventually took her to Family Dollar, where he convinced a stranger to go inside and purchase peroxide for him.

She also told the officer that she ultimately escaped when Mr. Robinson-Bey brought her to her cousin's house and she managed to elude him.

{¶25} After leaving the hospital, B.H. was transported to the police station and spoke with Detective Leonard Stephens. The State played the recording of her interview for the jury, and, in it, B.H. once again described how Mr. Robinson-Bey had kept her in his car and had shot her in the leg. Following her interview, the police arrested Mr. Robinson-Bey, and Detective Stephens interviewed him. The State also played the recording of his interview for the jury.

{¶26} During his recorded interview, Mr. Robinson-Bey stated that he had picked up B.H. the previous afternoon because she had called him for help. He repeatedly referred to her being involved in some kind of "situation," but did not elaborate other than to imply that it involved drugs and that she was asking him for money. He denied that he held B.H. against her will or shot her. According to Mr. Robinson-Bey, B.H. was already injured when he picked her up, and she did not want to go to the hospital because she had drugs in her system. He acknowledged that they drove around most of the evening, stopping at Family Dollar to purchase peroxide, and eventually stopping at her cousin's house. When Detective Stephens asked Mr. Robinson-Bey why B.H. would accuse him of shooting her, he suggested that she might be lying to protect someone else, such as a drug dealer. He denied that he owned a gun or had access to a gun.

{¶27} Detectives Kelly Johnson and Daniel Gump searched Mr. Robinson-Bey's car following his arrest. Inside the car, they found a .38 caliber revolver wedged between the driver's seat and center console, as well as a pill bottle full of .38 caliber bullets in the rear pouch of the front passenger's seat. The revolver was empty upon recovery, but Detective Johnson

testified that they were able to extract a bullet from the inside of the front passenger's door, in the area below the arm rest. Inside the car, the detectives also found a bottle of peroxide.

{¶28} Lindsey Rausch, a forensic scientist from the Bureau of Criminal Investigation ("BCI"), conducted DNA testing on the gun that the police found inside Mr. Robinson-Bey's car, as well as a swab they took from the passenger's seat of the car. She testified that the DNA she found on the swab from the passenger's seat was consistent with B.H.'s DNA. Additionally, she testified that DNA she found on the gun was consistent with Mr. Robinson-Bey's DNA.

{¶29} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved beyond a reasonable doubt that the .38 caliber gun found inside Mr. Robinson-Bey's car was operable and that he knowingly shot B.H. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The jury heard testimony that the police found a gun in Mr. Robinson-Bey's car, that B.H. was shot from behind while attempting to flee the car, and that a bullet was extracted from the inside the front passenger's door. Further, the jury heard testimony that the two had been arguing, that Mr. Robinson-Bey had refused to let B.H. out of the car, and that he was carrying the gun when he grabbed her and walked her back to the car. Though no one test-fired the gun found in his car, a jury may infer a firearm's operability based on the totality of the circumstances. *See State v. Ware*, 9th Dist. Summit No. 22919, 2006-Ohio-2693, ¶ 13. The totality of the circumstances herein support the inference that Mr. Robinson-Bey shot B.H. to prevent her from leaving and, thus, acted knowingly and had possession of an operable firearm. *See id.*; R.C. 2901.22(B). The record does not support his assertion that his convictions are based on insufficient evidence. As such, his fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR ONE

THE INTRODUCTION OF MR. ROBINSON-BEY'S CRIMINAL HISTORY DEPRIVED HIM OF DUE PROCESS AND A FAIR TRIAL[.]

{¶30} In his first assignment of error, Mr. Robinson-Bey argues that he was denied a fair trial when the non-jury exhibits were submitted to the jury and Detective Stephens informed the jury that he (Mr. Robinson-Bey) had been arrested several times for bank robbery. We disagree.

{¶31} Initially, we note that Mr. Robinson-Bey has not framed his argument in terms of any particular ruling on the part of the trial court. Notably, after learning that the non-jury exhibits had inadvertently been given to the jury, Mr. Robinson-Bey chose to file a Crim.R. 29(C) motion for acquittal and requested relief strictly within the context of that motion. On appeal, however, he has not directly challenged the trial court's denial of his motion. Instead, he has framed his argument in terms of a general due process violation. He has made no attempt to comport with Loc.R. 7(B)(7) or to explain why this Court ought to review his argument outside of the only context in which it was raised, i.e., in a Crim.R. 29(C) motion for acquittal. Even assuming that his argument is properly before us, however, we conclude that it lacks merit.

{¶32} "The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule." *State v. Allen*, 29 Ohio St.3d 53, 55 (1987). Even so, "[w]hen a prior conviction is an element of the charged offense, it may be admitted into evidence for the purpose of proving that element." *State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 13. "Neither the [S]tate nor the trial court is required to accept a defendant's stipulation as to the existence of the conviction." *State v. Smith*, 68 Ohio App.3d 692, 695 (9th Dist.1990). Moreover, even if prior convictions are improperly introduced, a reversal is not warranted if the remaining evidence

"overwhelmingly establishes [the defendant's] guilt." *State v. Williams*, 38 Ohio St.3d 346, 351 (1988).

{¶33} As previously noted, the parties agreed to stipulate that Mr. Robinson-Bey had been convicted of a felony offense of violence for purposes of his weapon under disability charge. They further agreed that only the court would receive the non-jury exhibits, i.e., (1) the certified copy of his prior conviction, and (2) the CCH that the State intended to submit to prove his RVO specifications. It is undisputed that the non-jury exhibits were inadvertently given to the jury during deliberations. Further, when Detective Stephens testified, he told the jury that Mr. Robinson-Bey had been "arrested for bank robbery a couple times." Though the latter drew an objection and resulted in a curative instruction, the court was unable to address the problem of the non-jury exhibits with the jury. The parties did not learn that the non-jury exhibits had gone to the jury until after the verdicts had been returned and the jury had been excused.

{¶34} Mr. Robinson-Bey does not dispute the fact that, due to his weapon under disability charge, the jury had to be told that he had at least one prior conviction for a felony offense of violence. *See* R.C. 2929.13(A)(2). It is his argument that he was prejudiced when the jury learned the *extent* of his criminal history. He argues that, absent that information, the jury would not have been aware that he had a lengthy record, that his convictions spanned the course of over thirty years, and that many of them involved the use of a firearm. According to Mr. Robinson-Bey, the inadvertent introduction of his entire criminal history "had an undeniably prejudicial impact." Additionally, he argues that it deprived him of due process because he premised his decision to waive certain rights (i.e., his right to testify and to have the jury decide his RVO specifications) upon the parties' stipulation that the jury would receive only limited information about one of his prior convictions.

{¶35} Having reviewed the record, we cannot conclude that Mr. Robinson-Bey has established material prejudice as a result of either the submission of the non-jury exhibits to the jury or Detective Stephens' testimony. *See Williams*, 38 Ohio St.3d at 351. First, the State set forth a wealth of evidence against him. The police found a .38 caliber revolver tucked between the driver's seat of his car and his center console, and the DNA they found on the gun was consistent with his DNA. Mr. Robinson-Bey stipulated that he had a prior conviction for a felony offense of violence, so his mere possession of the gun warranted a conviction for having a weapon under disability. *See* R.C. 2929.13(A)(2). As to his convictions for abduction and felonious assault, B.H. testified that Mr. Robinson-Bey held her captive in his car, shot her when she tried to flee, and forced her back into the car at gun point. There was evidence that she did, in fact, sustain a gunshot wound to the leg, and a bullet was extracted from the inside of the front passenger's door of Mr. Robinson-Bey's car. The bullet penetrated the inside of the door at a height that supported B.H.'s claim that she was shot as she jumped from the car and her left leg was still inside. Further, Mr. Robinson-Bey admitted that he was with B.H. that day/evening and drove her to several of the same places she mentioned (e.g., Family Dollar and her cousin's house). Though he claimed that B.H. was already injured when the two first met, her testimony, her injury, and the physical evidence the police found inside his car all belied his claim.

{¶36} Second, this Court finds specious Mr. Robinson-Bey's assertion that he only waived certain rights because he believed that, if he did, the majority of his criminal history would be kept from the jury. The decisions whether to testify and whether to waive one's right to a jury trial are highly tactical in nature, and any number of factors could have influenced his decision to waive those rights. *See State v. Nesbit*, 9th Dist. Wayne No. 05CA0021, 2006-Ohio-921, ¶ 9; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 55. This Court will not

speculate as to whether he would have chosen differently had he known that the jury would nonetheless be exposed to his criminal history. *See State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 34 ("[T]his Court will not engage in speculation."). Had Mr. Robinson-Bey chosen to testify or to present his RVO specifications to the jury, many, if not all, of his criminal convictions would have been admitted on cross-examination or during the State's case-in-chief. If his goal was to minimize the jury's exposure to his prior record, then testifying or trying his RVO specifications to the jury would have been inconsistent with that goal.

{¶37} While it is unfortunate that the jury was exposed to Mr. Robinson-Bey's entire criminal history, this Court cannot conclude that he was materially prejudiced thereby. The State's evidence against him was overwhelming. In light of that overwhelming evidence, we must conclude that the errors that occurred here were harmless beyond a reasonable doubt. *See Williams* at 351. As such, his first assignment of error is overruled.

### ASSIGNMENT OF ERROR TWO

MR. ROBINSON-BEY'S CONVICTION FOR ADDUCTION (sic) VIOLATED HIS DUE PROCESS RIGHTS AND RIGHT TO JUROR UNANIMITY PURSUANT TO CRIMINAL RULE 31(A).

{¶38} In his second assignment of error, Mr. Robinson-Bey argues that the trial court erred when it instructed the jury on the offense of abduction. He acknowledges that he did not object to the instruction, but argues that either plain or structural error occurred because the instruction failed to ensure a unanimous verdict. Upon review, we reject his argument.

{¶39} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The doctrine of plain error requires that there must be: (1) a deviation from a legal rule; (2) that is an obvious defect in the trial; and (3) that affects the appellant's substantial rights. *State v. Barnes*, 94 Ohio

St.3d 21, 27 (2002). An error affects the appellant's substantial rights if it affected the outcome of the trial. *Id.* "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶40} "A criminal defendant is entitled to a unanimous jury verdict. Crim.R. 31(A). If two distinct offenses are presented in a single charge, * * * unanimity may be compromised." *State v. Ward*, 9th Dist. Lorain No. 09CA009720, 2011-Ohio-518, ¶ 5. Yet, "'the law on juror unanimity distinguishes between the elements of a crime and the means by which a defendant commits an element.'" *State v. Schell*, 9th Dist. Summit No. 28255, 2017-Ohio-2641, ¶ 45, quoting *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 37.

> "'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.
>
> In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.'"

*State v. Carlton*, 9th Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 24, quoting *Gardner* at ¶ 49-50, quoting *State v. Jones*, 96 Haw. 161, 170 (2001). Thus, in juror unanimity cases, "the 'critical inquiry is whether the case involved 'alternative means' or 'multiple acts.''" *Carlton* at ¶ 24, quoting *Gardner* at ¶ 48.

{¶41} When defining the offense of abduction for the jurors, the court instructed them as follows:

> Abduction. Before you can find [Mr. Robinson-Bey] guilty of abduction, a felony of the third degree, you must find beyond a reasonable doubt that on or about the 22nd day of March, 2017, in Summit County, Ohio, [he], without privilege to do so, knowingly by force or threat removed [B.H.] from the place where she was found or by force or threat restrained [her] of her liberty under circumstances that created a risk of physical harm to her or placed her in fear.

The instruction, therefore, referenced two different subsections of the abduction statute. *See* R.C. 2905.02(A)(1) and (A)(2). Because neither the instruction, nor the verdict form for his abduction charge differentiated between those two subsections, Mr. Robinson-Bey argues that the court "permitted the jurors to return a verdict of guilty * * * without necessarily arriving at a unanimous agreement about what the offense was."

{¶42} The record does not support the conclusion that the State accused Mr. Robinson-Bey of committing multiple acts, any of which could have supported a charge of abduction. *Compare Ward*, 2011-Ohio-518, at ¶ 9-14. Instead, it reflects that the State accused him of committing a single act by alternative means. *See, e.g., Carlton* at ¶ 26. The State set forth evidence that Mr. Robinson-Bey shot B.H. in the leg to prevent her from leaving, brought her back to his car at gunpoint, and repeatedly refused to let her go. Accordingly, a rational trier of fact could have found either that he (1) knowingly employed force to remove her from the place where he found her, R.C. 2905.02(A)(1); or (2) knowingly employed force to restrain her liberty under circumstances that created a risk of physical harm to her or placed her in fear, R.C. 2905.02(A)(2). Even if individual jurors disagreed as to which subsection applied, juror "'[u]nanimity is not required * * * as to the means by which [a] crime was committed so long as substantial evidence supports each alternative means.'" *Id.* at ¶ 24, quoting *Gardner* at ¶ 49-50, quoting *Jones* at 170. Because the record reflects that the State presented substantial evidence to

support Mr. Robinson-Bey's conviction under either R.C. 2905.02(A)(1) or (A)(2), we reject his argument that the court erred when it instructed the jury. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 50-57. His second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN DENYING MR. ROBINSON-BEY'S REQUEST FOR A LESSER OFFENSE JURY INSTRUCTION[.]

**{¶43}** In his third assignment of error, Mr. Robinson argues that the trial court erred when it denied his request to instruct the jury on the lesser-included-offenses of negligent assault and unlawful restraint. We disagree.

**{¶44}** "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. "[A] trial court must instruct the jury on a lesser[-]included offense if 'the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense.'" *State v. Lockhart*, 9th Dist. Summit No. 28053, 2017-Ohio-914, ¶ 14, quoting *State v. Carter*, 89 Ohio St.3d 593, 600 (2000). "In deciding whether to instruct the jury on a lesser-included or inferior-degree offense, the trial court must view the evidence in a light most favorable to the defendant." *State v. Meadows*, 9th Dist. Summit No. 26549, 2013-Ohio-4271, ¶ 8.

**{¶45}** This Court reviews a trial court's refusal to give a requested jury instruction for an abuse of discretion. *Id.* at ¶ 7. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded

from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶46} Negligent assault is a lesser-included offense of felonious assault. *State v. Danko*, 9th Dist. Medina No. 07CA0070-M, 2008-Ohio-2903, ¶ 46. A person commits negligent assault if he "negligently, by means of a deadly weapon or dangerous ordnance * * *, cause[s] physical harm to another * * *." R.C. 2903.14(A). A person acts negligently "when, because of a substantial lapse from due care, [he] fails to perceive or avoid a risk that [his] conduct may cause a certain result or may be of a certain nature." R.C. 2901.22(D).

{¶47} "Unlawful restraint is a lesser included offense of kidnapping." *State v. Cruz*, 9th Dist. Medina No. 03CA0031-M, 2003-Ohio-4782, ¶ 24. A person commits unlawful restraint if he, "without privilege to do so, * * * knowingly restrain[s] another of the other person's liberty." R.C. 2905.03(A). Accordingly, to constitute unlawful restraint, a person must have restrained another "without the use of force or threat and without either causing a risk of physical harm to him or placing him in fear." *State v. Urban*, 9th Dist. Lorain No. 08CA009396, 2009-Ohio-2789, ¶ 19.

{¶48} At the conclusion of trial, Mr. Robinson-Bey requested jury instructions on the lesser-included offenses of negligent assault and unlawful restraint. The State opposed both requests, noting that there was no evidence he had acted negligently or had restrained B.H. without using force or causing her fear. The State stressed that Mr. Robinson-Bey had physically harmed B.H., had employed force, and had induced fear when he shot her in the leg and dragged her back to his car at gunpoint. Accordingly, the State argued that the evidence did not reasonably support acquittals on the crimes charged and convictions on the lesser-included offenses.

{¶49} The trial court ultimately refused to instruct the jury on either of the lesser-included offenses that Mr. Robinson-Bey requested. As to the requested instruction on negligent assault, the court noted that Mr. Robinson-Bey had altogether denied shooting B.H., so there was no evidence to support a theory of negligence. As to the requested instruction on unlawful restraint, the court denied the request after noting that a lesser-included offense instruction is only appropriate when it is possible for the trier of fact to find a defendant not guilty of the greater, charged offense.

{¶50} Having reviewed the record, we cannot conclude that the trial court abused its discretion when it refused to instruct the jury on the lesser-included offenses of negligent assault and unlawful restraint. *See Meadows*, 2013-Ohio-4271, at ¶ 7. As the court noted, Mr. Robinson-Bey altogether denied shooting B.H. He also altogether denied restraining her in any fashion. It was his position that B.H. was already injured when he met her and that the two simply spent time together until parting company at her cousin's house. There was no evidence that he caused her gunshot wound due to a substantial lapse in care or judgment. *See* R.C. 2901.22(D). Further, there was no evidence that he restrained her in a manner that did not involve the use of force or a risk of physical harm. *See Urban*, 2009-Ohio-2789, at ¶ 19. Because the evidence did not reasonably support convictions on the lesser-included offenses of negligent assault and unlawful restraint, the court did not act unreasonably when it denied Mr. Robinson-Bey's requests for those instructions. *See Lockhart*, 2017-Ohio-914, at ¶ 14, quoting *Carter*, 89 Ohio St.3d at 600. As such, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

MR. ROBINSON-BEY'S RVO CONVICTION MUST BE REVERSED BASED UPON AN UNSUPPORTABLE IRREGULARITY IN THE PROCEEDINGS[.]

{¶51} In his fourth assignment of error, Mr. Robinson-Bey argues that his RVO specification must be reversed due to an irregularity in the proceedings. Because the trial court spoke with the jury before reaching its decision on his RVO specification, Mr. Robinson-Bey argues that there was an impermissible irregularity in the court's deliberative process. For the reasons that follow, we reject his argument.

{¶52} Mr. Robinson-Bey acknowledges that he did not move for relief or otherwise raise with the trial court his argument that an irregularity in the proceedings occurred. He argues, however, that an irregularity in the court's deliberative process constitutes a structural error that may be raised for the first time on appeal.

{¶53} Structural error is limited to certain constitutional errors that "affect[] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, ¶ 22, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 17. While plain error requires a showing that the outcome would have been different but for the error, structural errors are "deemed prejudicial per se and require[] an automatic reversal." *Davis* at ¶ 22. The structural error doctrine applies "only in a very 'limited class of cases.'" *Perry* at ¶ 18, quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997). Moreover, before the doctrine applies, an appellant first must demonstrate that a constitutional error actually occurred. *State v. Williams*, 9th Dist. Summit No. 26014, 2012-Ohio-5873, ¶ 7.

{¶54} Following trial, the court held a hearing on Mr. Robinson-Bey's Crim.R. 29(C) motion for acquittal and his argument regarding the jury's exposure to the non-jury exhibits. The court recited the chain of events for purposes of the record and, in doing so, stated:

> The jury reached a verdict later that afternoon. The Court went in and spoke with the jurors. I will indicate to you that when I informed the jury of what Mr.

> Robinson-Bey had been convicted of, they indicated nothing of the sort to me that they had even seen [the non-jury exhibits].
>
> The Court then -- all -- it was close – or it was 5 or thereafter, the court reporter was excused, the Court left.
>
> Both attorneys for Mr. Robinson-Bey and [the prosecutor] proceeded to have conversation with I'm not sure how many jurors, and I was notified by phone shortly thereafter that [the non-jury exhibits] went back to the jury.

The court went on to discuss Mr. Robinson-Bey's Crim.R. 29(C) motion and ultimately denied it. It then addressed his RVO specification, noting simply that it had reviewed the non-jury exhibits and that it was finding him guilty.

{¶55} Mr. Robinson-Bey argues that a structural error occurred when the court spoke to the jurors before deciding his RVO specification. He relies on *State v. Marzett*, 191 Ohio App.3d 181, 2010-Ohio-5428 (8th Dist.), wherein the Eighth District held that a "trial court's conversations with [a] jury outside the presence of the defense and while still deliberating its verdict on pending charges is an unsupportable irregularity in the proceedings that merits reversal." *Marzett* at ¶ 42. This case, however, is wholly distinguishable from *Marzett*.

{¶56} In *Marzett*, the defendant asserted his right to a jury trial on a charge of murder, but asked the trial court to decide his remaining charges for felony murder and felonious assault. *Id.* at ¶ 4. The court honored his request, so a "hybrid jury and bench trial" occurred with the court and jury deciding different counts involving the same set of operative facts. *Id.* at ¶ 4, 22. At the conclusion of trial, the jury acquitted the defendant, but the court withheld its verdict. *Id.* at ¶ 27-37. The court then spoke with the jurors outside the presence of counsel and, two weeks later, issued a guilty verdict. *Id.* The Eighth District determined that a structural error occurred when the trial court, still in the process of deliberating, had ex parte communications with the jurors. *Id.* at ¶ 42. In reaching its decision, however, the Eighth District noted that the record supported the conclusion that the trial court had engaged the jury in "substantive discussions"

about the case. *Id.* at ¶ 38. It further noted that the case had come before it upon a "peculiar procedural posture" that had to be "taken into consideration in examining the propriety of the discussions held between the trial court and the jury and outside of appellant's presence." *Id.* at ¶ 23.

**{¶57}** Unlike *Marzett*, it is unclear from the record here whether the trial court spoke to the jury outside the presence of counsel. The court's actual conversation with the jury is not a part of the record, and the court indicated that the attorneys spoke with the jurors once it finished with them. Even assuming the court spoke with the jurors ex parte, however, there also is no indication in the record that it engaged them in substantive discussions about the case. *Compare id.* at ¶ 38. The record reflects only that the court told them "what Mr. Robinson-Bey had been convicted of." More importantly, unlike *Marzett*, Mr. Robinson-Bey's jury and the trial court were not asked to decide different counts upon the same set of operative facts. *Compare id.* at ¶ 23 (noting the case's "peculiar procedural posture"). His RVO specification only required the court to find that he had previously been convicted of a violent felony of the type enumerated within R.C. 2929.01(CC)(1)(a)-(b). Accordingly, unlike *Marzett*, there was no danger that the court's exchange with the jury might affect its deliberative process. *Compare id.*

**{¶58}** Upon review, Mr. Robinson-Bey has not shown that the court committed a constitutional violation, much less structural error, when it spoke to the jurors before is issued a decision on his RVO specification. *See Williams*, 2012-Ohio-5873, at ¶ 7. Accordingly, we reject his argument that his RVO specification must be reversed due to an irregularity in the proceedings. His fourth assignment of error is overruled.

III.

{¶59} Mr. Robinson-Bey's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ANDREA L. WHITAKER and WILLIAM T. WHITAKER, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and MARRETT W. HANNA, Assistant Prosecuting Attorney, for Appellee.