[Cite as *State v. Laughlin*, 2014-Ohio-5417.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27185 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS H. LAUGHLIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 13 08 2139 (A) |

DECISION AND JOURNAL ENTRY

Dated: December 10, 2014

CARR, Judge.

**{¶1}** Appellant Thomas Laughlin appeals his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Laughlin, along with a co-defendant, was indicted on one count of breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree. He pleaded not guilty and the matter was tried to a jury. At the conclusion of trial, the trial court instructed the jury on the indicted count of breaking and entering, as well as on the lesser included offense of criminal trespass. The jury found Laughlin guilty of criminal trespass, a misdemeanor of the fourth degree, and the trial court sentenced him accordingly. Laughlin filed a timely appeal in which he raises three assignments of error for review.

II.

## ASSIGNMENT OF ERROR I

THE CONVICTION OF THE APPELLANT FOR THE CHARGE OF CRIMINAL TRESPASS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED.

## ASSIGNMENT OF ERROR II

THERE WAS INSUFFICIENT EVIDENCE TO PROVE THE OFFENSE OF CRIMINAL TRESPASS BEYOND A REASONABLE DOUBT, AND THUS, THE TRIAL COURT INCORRECTLY DENIED APPELLANT'S MOTION FOR ACQUITTAL IN V[I]OLATION OF CRIMINAL RULE 29.

**{¶3}** Laughlin argues that the trial court erred by denying his Crim.R. 29 motion for acquittal. He further argues that his conviction was against the manifest weight of the evidence. This Court disagrees.

Motion for acquittal

**{¶4}** Crim.R. 29 provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

**{¶5}** "Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 113, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Diar* at ¶ 113, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶6}　Laughlin was convicted of criminal trespass in violation of R.C. 2911.21, which states in relevant part:[1]

(A) No person, without privilege to do so, shall do any of the following:

(1) Knowingly enter or remain on the land or premises of another;

(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;

(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders * * *[.]

{¶7}　R.C. 2901.22(B) states:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶8}　R.C. 2901.22(C) states:

A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶9}　As used in the criminal code, "privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶10}　Pursuant to R.C. 2923.03(A)(2), "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the

---

[1] The trial court instructed the jury on the elements of criminal trespass as enunciated in R.C. 2911.21(A)(1), (2), and (3). It did not instruct on the elements as enunciated in R.C. 2911.21(A)(4).

offense[.]" One who is complicit in committing a criminal act, "shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F).

{¶11} At 12:36 p.m., on August 7, 2013, a 911 emergency dispatch operator received a call from Robert Johnson who lived at 1034 Dietz Avenue, in Akron. The parties stipulated to the authenticity of the call. By way of context, Mr. Johnson reported that two adjacent homes across from his own, one at 1029 Dietz and the other with no discernable house number, were vacant, condemned, and had no working utilities. He stated that there had been signs that looked like summonses posted at 1029 Dietz for the last three days, but that they were gone that morning. He had earlier reported his concerns that juveniles were smoking, squatting, and causing trouble in the vacant homes. On this day, he reported that he saw two white young men in a gray Monte Carlo or Impala, with license plate number FTF 1656, drive to the back of 1029 Dietz and go to the side door of the adjacent vacant home. He reported that the men quickly returned to the car, now carrying a large bucket full of pipes. Mr. Johnson stated that, two days earlier, the same car was at 1029 Dietz, at which time the occupants picked up something from the back porch, put it in the car, and drove away. He said that whatever they took was rolled up inside some carpeting.

{¶12} Based on the 911 call, the operator dispatched officers to Dietz Avenue regarding a burglary in progress. Officer Simona Hall of the Akron Police Department responded to the scene where she was met by and spoke further with Mr. Johnson. Officer Hall then investigated both 1029 and 1025 Dietz, the two vacant houses at issue. She authenticated photos of 1029 Dietz that showed two notices on the home indicating that it was vacant and condemned. She testified that the notice of condemnation meant that the house was not to be occupied and must

be vacated. Moreover, she testified that if the police find someone in or on the premises of a condemned house, they investigate to determine who the person is and why he is on the premises.

{¶13} While investigating 1029 Dietz, Officer Hall noticed that the back door was pulled up so that it appeared to be closed, but it was not closed. The deadbolt in the lock had been removed. She entered the house and went to the basement where she observed that copper pipes had been "pinched cut" from the water meter, hot water heater, and ceiling. Water was dripping from the cut ends of the pipes. Officer Hall testified that, based on her experience investigating incidents of copper pipes stolen from other homes, she believed that the pipes had been cut away very recently based on the existence of water dripping from the remaining pipes.

{¶14} Officer Hall then spoke with another neighbor, Mark Reno, who also observed suspicious activity in the area. His comments were consistent with what the officer observed on the premises.

{¶15} Mark Reno lives at 1033 Dietz Avenue. He testified that two adjacent houses next to him are abandoned. He knew that no one was supposed to be living at 1029 Dietz because there had been a Sheriff's sale sign on the property, although someone had torn it down. There had also been signs on the property regarding the property's status as vacant, that trespassing was prohibited, and the hours that authorized workers could perform work. Those signs too had been torn down.

{¶16} Mr. Reno testified that he was at home on August 7, 2013, when he heard two cars pull into the driveway of 1029 Dietz a few minutes apart. In the first car were two brothers who had lived at 1029 Dietz. They left within five minutes. Minutes later, a second car containing two young white men pulled into the driveway. One had a large, white bucket. At

least one of the men went to the back door of 1029 and returned with pipe in the bucket. Before the two men drove away, Mr. Reno wrote down the license plate number of the car.

{¶17} Officer Brian Armstead of the Akron Police Department heard the dispatch call regarding a burglary at a vacant home on August 7, 2013. Based on his training and experience, he knew that if people are in a vacant house, almost certainly "they are scrapping." Therefore, instead of reporting to the scene, he typically went to nearby scrap yards to see if anyone appeared with items to sell as scrap. He obtained a description of the alleged perpetrators, their white bucket, and their car, including the license plate number. Around 12:45 p.m., Officer Armstead saw a car with the reported license plate number parked at a scrap yard approximately four or five miles from 1029 Dietz. He asked an employee whose car that was. The employee pointed to two men in the garage. Upon entering the garage, he saw two men fitting the description of the perpetrators using a sledge hammer to break off fittings from some copper pipes. He was not sure which of the men wielded the sledge hammer. A large white pail with more copper in it was sitting nearby.

{¶18} Officer Armstead spoke with his brother, Officer Patrick Armstead who had gone to the vacant house and reported that plumbing had been pinched off and removed. Officer Brian Armstead testified that the copper pipes at the scrap yard had freshly cut and pinched ends. The police arrested Laughlin and the other white man with him.

{¶19} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found that the essential elements of the charge of criminal trespass were proved beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The State presented evidence that Laughlin was one of two men who drove onto the premises of 1029 Dietz Avenue. A neighbor identified two men other than

Laughlin and his companion as the most recent residents of the house. Witnesses testified that notices of condemnation had been posted on the house, although they had been removed as of the morning of August 7, 2013. There was evidence that the car in which Laughlin and a companion were occupants had been on the property two days earlier when the signs were still posted. Evidence demonstrated that the two men remained on the premises for a short time before leaving with a large bucket full of copper pipe. The car spotted at the home was found at a nearby scrap yard about ten minutes later. There was evidence that Laughlin and his companion were working together to remove fittings from copper pipe when Officer Armstead entered the garage at the scrap yard. Based on this evidence, the reasonable inference is that Laughlin was aware that 1029 Dietz was a vacant and condemned property and that he was without privilege to enter onto the premises. Accordingly, the State presented sufficient evidence of the crime of criminal trespass, and the trial court properly denied Laughlin's Crim.R. 29 motion for acquittal.

Manifest weight of the evidence

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id.*

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, at ¶ 5.

{¶20} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶21} The bulk of the evidence is recited above. No witness identified Laughlin as one of the men seen at 1029 Dietz, although he was identified at the scrap yard as one of the two white men who arrived in a car bearing the license plate number reported by two witnesses who saw the car at the house. Mr. Reno was not certain whether Laughlin entered 1029 Dietz or whether he remained with the car. Officer Armstead was not certain whether Laughlin wielded the sledge hammer in the scrap yard garage, or whether his companion used the hammer as Laughlin stood nearby observing.

{¶22} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of Laughlin. The weight of the evidence supports the conclusion that Laughlin accompanied another man to the vacant and condemned premised located at 1029 Dietz. The evidence indicates that he aided his companion in removing copper pipe from the premises for the purpose of selling it at a scrap yard, and that he was not privileged to enter the land for that or any other purpose. Nevertheless, he entered the land on August 7, 2013, despite those restrictions. Accordingly, Laughlin's conviction for criminal trespass is not against the manifest weight of the evidence.

{¶23} Laughlin's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT GAVE A JURY INSTRUCTION ON
THE LESSER INCLUDED OFFENSE OF CRIMINAL TRESPASS.

{¶24} Laughlin argues that the trial court erred by instructing the jury on the lesser included offense of criminal trespass because there was insufficient evidence to prove all essential elements of the lesser included offense. This Court disagrees.

{¶25} Laughlin concedes that criminal trespass is a lesser included offense of breaking and entering. This Court agrees. *See State v. Shawhan*, 9th Dist. Summit No. 24244, 2009-Ohio-1986.

{¶26} The test for determining whether an instruction on a lesser included offense is warranted is "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." *State v. Carter*, 89 Ohio St.3d 593, 600 (2000). Here, Laughlin confines his assignment of error to the argument that the trial court erred in instructing on the lesser included offense of criminal trespass only because there was insufficient evidence to support a conviction for that offense. As we concluded above, the State presented sufficient evidence to establish the essential elements of the offense of criminal trespass. Laughlin's third assignment of error is overruled.

### III.

{¶27} Laughlin's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

T. KINSEY MCINTURF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.