[Cite as *State v. Marshall*, 2025-Ohio-2283.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 23CA012056 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTIAN MARSHALL | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 22CR106131 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2025

FLAGG LANZINGER, Presiding Judge.

{¶1} Christian Marshall appeals his convictions from the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} This appeal involves two shootings, the latter of which resulted in the death of Marshall's girlfriend, J.B. According to the evidence the State presented at trial, Marshall's friend, Savion, had a "beef" with Lucas. Savion fought with Lucas and Lucas's friend, J.Bl., a few weeks prior to the underlying shootings. On the day of the shootings, Savion argued with Lucas and J.Bl. at a gas station and at a Wendy's restaurant. After they argued, Savion called Marshall and told Marshall he wanted to "score" because Savion wanted "payback" on Lucas.

{¶3} Savion arranged for Marshall to pick him up from his girlfriend's house. Marshall then contacted J.B. and told her to bring him his black fanny pack, which contained Marshall's gun. J.B. drove her stepfather's Jeep to pick up Marshall and Savion, and gave Marshall his gun.

Marshall, Savion, and J.B. then drove by Lucas's mother's house. According to the State, either Marshall or Savion fired three shots into a parked Chevy Impala as they drove by it. Two of Lucas's friends (H.G. and J.Bl.) were inside the parked car at the time the shots were fired, but neither was struck by the bullets.

{¶4} Lucas heard the gunshots while standing a short distance away. Lucas ran into the street and fired 13 gunshots at the Jeep as it drove down the street. One of those shots struck J.B., who sustained a fatal gunshot wound to her back.

{¶5} Marshall fled the scene and dropped Savion off at Savion's grandparents' house before Marshall called 911 to report that J.B. had been shot. When Marshall called 911, he told the dispatcher that J.B. had been shot and that he was on his way to the hospital. When the dispatcher asked Marshall where the shooting occurred, Marshall told the dispatcher it happened near a water tower. According to the State, this was a lie. The dispatcher instructed Marshall to pull over because the police were already behind the Jeep and an ambulance was on its way. Marshall complied. The police arrived and observed J.B. slumped over in the front-passenger seat of the Jeep with a gunshot wound in her back. J.B. was pronounced dead at the scene.

{¶6} A grand jury indicted Marshall on 12 counts, including a count for the murder of J.B. Specifically, the indictment charged Marshall with the following counts:

Count 1: felony murder in violation of R.C. 2903.02(B) with the predicate offense of felonious assault (victim: J.B.), along with two firearm specifications;

Count 2: involuntary manslaughter in violation of R.C. 2903.04(A) (victim: J.B.), along with two firearm specifications;

Count 3: felonious assault in violation of R.C. 2903.11(A)(2) (victim: H.G.), along with two firearm specifications;

Count 4: attempted murder in violation of R.C. 2923.02 and R.C. 2903.02(A) (victim: H.G.), along with two firearm specifications;

Count 5: felonious assault in violation of R.C. 2903.11(A) (victim: J.Bl.), along with two firearm specifications;

Count 6: attempted murder in violation of R.C. 2923.02 and R.C. 2903.02(A) (victim: J.Bl.), along with two firearm specifications;

Count 7: discharge of firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3) (i.e., a public road), along with two firearm specifications;

Count 8: having weapons while under disability in violation of R.C. 2923.13(A)(2);

Count 9: tampering with evidence in violation of R.C. 2921.12(A)(1) (i.e., the gun used to shoot at the parked vehicle);

Count 10: tampering with evidence in violation of R.C. 2921.12(A)(1) (i.e., the body of J.B.);

Count 11: improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(A); and

Count 12: improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B).

The State later dismissed the count for involuntary manslaughter. Marshall pleaded not guilty and the matter proceeded to a jury trial.

{¶7} During the 8-day trial, the State presented testimony from 19 witnesses. The defense presented testimony from two witnesses. Marshall did not testify. After hearing the evidence, the jury found Marshall guilty of all charges and specifications. The trial court sentenced Marshall to an aggregate prison sentence of 34-38 years to life.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION IN LIMINE AND SUBSEQUENT OBJECTIONS TO EXCLUDE STATEMENTS, EMAILS, TEXT MESSAGES, AND SOCIAL MEDIA POSTS OF DECEDENT, [J.B.], AND THROUGH THE TESTIMONY OF STEPHANIE [] AS THE RECIPIENT OF THE COMMUNICATIONS WITH DECEDENT, [J.B.].

{¶8} In his first assignment of error, Marshall asserts that the trial court erred by allowing the State to elicit testimony from Stephanie (i.e., J.B.'s friend) about the statements J.B.

purportedly made to Stephanie on the night of the shootings on the basis that they were statements against interest. Marshall asserts that these statements constituted hearsay and that they violated his rights under the Confrontation Clause.

{¶9} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). "Generally, hearsay is inadmissible at trial unless provided for by the Rules of Evidence." *Drew v. Marino*, 2004-Ohio-1071, ¶ 9 (9th Dist.); Evid.R. 802. Evid.R. 804(B) provides exceptions to the hearsay rule when the declarant is unavailable. Here, the State argued that J.B.'s statements to Stephanie were statements against interest under Evid.R. 804(B)(3) and, therefore, fell within an exception to the hearsay rule.

{¶10} On appeal, Marshall has not directed this Court to any specific statements he claims were hearsay and not subject to the exception for statements against interest. In fact, the only specific statement Marshall directs this Court to is Stephanie's testimony that she spoke with J.B. "everyday." Marshall argues that cell phone records contradicted Stephanie's testimony that she spoke with J.B. "everyday." But whether cell phone records contradicted Stephanie's testimony is not an issue of hearsay, it is an issue of Stephanie's credibility. Marshall has not directed this Court to any specific statements he claims were hearsay, nor has he explained how those statements were not subject to the exception for statements against interest, as the State argued at trial. "It is not the duty of this Court to search the record for evidence to support defendant's argument of an alleged error." *State v. Long*, 2011-Ohio-1050, ¶ 8 (9th Dist.), quoting *State v. Porter*, 1997 WL 803070, *4 (9th Dist. Dec. 24, 1997); *accord In re I.T.*, 2016-Ohio-555, ¶ 13 (9th Dist.) (rejecting the appellant's challenge to the alleged admission of impermissible hearsay because the appellant did not identify the specific statements he claimed constituted hearsay); *State v. Taylor*, 2010-

Ohio-962, ¶ 25 (9th Dist.) (same). This Court will not create an argument on Marshall's behalf. *In re I.T.* at ¶ 13. Marshall's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION IN LIMINE AND SUBSEQUENT OBJECTIONS TO EXCLUDE HEARSAY STATEMENTS OF CO-DEFENDANT, [SAVION] AND OTHER WITNESSES.

{¶11} In his second assignment of error, Marshall asserts that the trial court erred by denying his motion in limine and subsequent objections to exclude hearsay statements of Savion at trial. Marshall asserts that the State introduced statements Savion allegedly made through other witnesses, which constituted hearsay and violated his rights under the Confrontation Clause. Marshall asserts that the State elicited these statements to establish a motive and to prove that Marshall was guilty by association.

{¶12} Like his first assignment of error, Marshall has not identified specific statements that he claims constituted inadmissible hearsay. Consequently, this Court will not address the merits of Marshall's second assignment of error. *In re I.T.* at ¶ 13 (declining to address the appellant's hearsay argument because the appellant had not identified specific statements he claimed constituted hearsay); *Taylor* at ¶ 25 (same). Marshall's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

NUMEROUS DEFICIENCIES OF TRIAL COUNSEL RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION.

{¶13} In his third assignment of error, Marshall asserts that his trial counsel rendered ineffective assistance. For the following reasons, this Court overrules Marshall's third assignment of error.

{¶14} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Marshall must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Marshall must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 2017-Ohio-8847, ¶ 27 (9th Dist.).

{¶15} Marshall asserts that his trial counsel rendered ineffective assistance for the following 12 reasons: (1) failure to object to the State's introduction of victim-impact testimony through J.B.'s mother; (2) failure to move to sever the charge for having weapons while under disability; (3) failure to object to the State's introduction of prior bad acts evidence, including his prior criminal history; (4) failure to object to cell phone records that the State failed to properly authenticate; (5) failure to object to the State's introduction of an Instagram photograph of him holding a gun; (6) failure to object to the prosecutor's repeated commentary on his constitutional right to remain silent; (7) failure to object to irrelevant bad acts evidence involving his sexual history; (8) failure to object to testimony as to the knowledge or understanding of non-testifying witnesses; (9) failure to move for a separation of witnesses as to Lucas's mother who was in the courtroom when Lucas testified; (10) failure to object to the State's bolstering of its witnesses through a detective's testimony; (11) failure to object and raise a *Daubert* challenge to the

scientific cell phone location data the State presented; and (12) failure to object to a detective's reconstruction testimony as to which shots he believed were fired into the Jeep first.

{¶16} Initially, this Court notes that Marshall has failed to properly develop an argument in support of his assignment or error, as required under App.R. 16(A)(7). App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "As this Court has stated, 'merely setting forth conclusory statements' does not satisfy an appellant's burden on appeal." *Pietrangelo v. Lorain Cty. Pr. & Pub. Co.*, 2017-Ohio-8783, ¶ 23 (9th Dist.), quoting *In re B.P.*, 2015-Ohio-48, ¶ 10 (9th Dist.).

{¶17} Here, Marshall attempts to support his assignment of error with citations to the transcript without identifying or explaining the relevant content on those transcript pages. It is not this Court's duty to review the transcript and identify the relevant portions on Marshall's behalf. *In re E.G.*, 2017-Ohio-2584, ¶ 27 (9th Dist.) ("[I]t is not the duty of this Court to scour the record for evidence and construct an argument on an appellant's behalf."); *see State v. Bedell*, 2018-Ohio-721, ¶ 20 (1st Dist.); *Leeseberg & Valentine, L.P.A. v. Willman*, 2024-Ohio-4879, ¶ 51, fn. 3 (10th Dist.), quoting *State ex rel. McKenney v. Jones*, 2022-Ohio-583, ¶ 28.

{¶18} Additionally, Marshall attempts to incorporate arguments contained in other assignments of error into this assignment of error. As this Court has explained, "Appellate Rules 12(A)(2) and 16(A)(7) require an appellant to set forth a separate argument in support of each assigned error." *State v. McKnight*, 2023-Ohio-1933, ¶ 10 (9th Dist.). For this reason, an appellant "cannot 'incorporate the arguments contained in the other assignments of error to support a different assignment of error.'" *Id.*, quoting *State v. Calhoun*, 2021-Ohio-1713, ¶ 24 (9th Dist.).

**{¶19}** Those deficiencies aside, Marshall has not argued, much less established, that the outcome of the trial would have been different but for his trial counsel's alleged errors. *Sowell*, 2016-Ohio-8025, at ¶ 138. Because Marshall has not established that he suffered prejudice, this Court need not address the merits of whether his trial counsel rendered a deficient performance. *Id.*; *Carter*, 2017-Ohio-8847, at ¶ 27 (9th Dist.) ("This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong."). Marshall's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE COURT ERRED IN PERMITTING INTRODUCTION OF OVERLY GRUESOME AND IRRELEVANT AUTOPSY PHOTOGRAPHS, INFLAMING THE JURY.

**{¶20}** In his fourth assignment of error, Marshall argues that the trial court erred by permitting the State to introduce overly gruesome and irrelevant autopsy photographs for the purpose of inflaming the jury. For the following reasons, this Court overrules Marshall's fourth assignment of error.

**{¶21}** "The admissibility of gruesome photographs in a noncapital case is considered with reference to Evid.R. 403." *State v. Tyus*, 2020-Ohio-4455, ¶ 17 (9th Dist.). "Under Evid.R. 403(A), otherwise relevant evidence 'is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *Id.*, quoting Evid.R. 403(A). A determination under "Evid.R. 403(A) rests within the discretion of the trial court." *Tyus* at ¶ 17.

**{¶22}** "Autopsy photographs are generally admissible to help the jury appreciate the nature of the crimes, to illustrate the coroner's or other witnesses' testimony by portraying the wounds, to help prove the defendant's intent, and to show the lack of accident or mistake." *Tyus*

at ¶ 18, quoting *State v. Buck*, 2017-Ohio-273, ¶ 22 (9th Dist.). "Consequently, autopsy photographs—even if gruesome—are not per se inadmissible." *Tyus* at ¶ 18

{¶23} Here, the State presented photographs from J.B.'s autopsy during its direct examination of the coroner. The record reflects that defense counsel requested a sidebar during the coroner's testimony prior to the State presenting the coroner with the autopsy photographs. Defense counsel indicated that showing all of the autopsy photographs would be inflammatory and time consuming. The State responded that it did not intend to show all of the photographs, but wanted to show the photographs that depicted the path of the bullet. The State then continued its direct examination of the coroner, including presenting the coroner with the autopsy photographs.

{¶24} The State later requested a side bar wherein it informed the trial court that it "restricted the photos, removing a number of what someone might determine to be gruesome photos." Shortly thereafter, the trial court called a recess because one of the jurors had an "emotional response" to the autopsy pictures. The trial court excused that juror and replaced her with an alternate juror. The State then continued with its direct examination of the coroner.

{¶25} After the State rested, the State moved to admit certain exhibits, including some of the autopsy photographs. Each autopsy photograph contained a number in the bottom right corner, ranging from 1-57. The State identified the photographs it presented during the coroner's testimony and asked the trial court to admit 13 of the photographs into evidence. Defense counsel did not object. The 13 autopsy photographs the trial court admitted into evidence are contained in the record on appeal. The autopsy photographs that the State presented during the coroner's testimony but were not admitted into evidence are not contained in the record on appeal.

{¶26} On appeal, Marshall has not identified which of the 13 photographs admitted into evidence were "overly gruesome." Instead, Marshall describes two photographs (without

identifying the photographs by exhibit number), neither of which was admitted into evidence or included in the record on appeal. Because those photographs are not included in the record on appeal, this Court cannot review whether they were "overly gruesome" and prejudicial to the defense. *See Ohio Bell Tel. Co. v. Rizzo*, 1984 WL 6337, *3 (8th Dist. Dec. 6, 1984) ("Where an exhibit is not admitted into evidence, an appellate court cannot review that ruling unless the exhibit is made part of the record by proffer."); *see also Riechers v. Biats*, 2010-Ohio-6448, ¶ 20 (9th Dist.). As a result, Marshall has not established that the trial court erred by permitting the State to introduce certain autopsy photographs. Marshall's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE STATE COMMITTED PROSECUTORIAL MISCONDUCT FOR REPEATEDLY ELICITING TESTIMONY AND COMMENTARY AS TO CHRISTIAN MARSHALL'S REFUSAL TO PROVIDE POLICE WITH A STATEMENT, IMPROPERLY FAULTING HIM FOR EXERCISING HIS CONSTITUTIONAL RIGHT TO REMAIN SILENT.

{¶27} In his fifth assignment of error, Marshall argues that the State committed prosecutorial misconduct by eliciting testimony as to his "uncooperativeness" in the investigation of J.B.'s death. Marshall argues that any commentary on his post-*Miranda* silence was impermissible, and that the State's witnesses' commentary on his silence suggested that he engaged in wrongdoing as opposed to exercising his right to remain silent.

{¶28} As this Court has explained:

The United States Constitution provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." Fifth Amendment to the United States Constitution. This federal constitutional protection has been incorporated against the States through the Fourteenth Amendment . . . . *Once a criminal defendant invokes his right against self-incrimination*, "the State cannot use the person's silence as substantive evidence in its case-in-chief." . . . This rule flows from the determination that "the [S]tate's substantive use of the defendant's * * * silence subverts the policies behind the Fifth Amendment privilege against self-incrimination and is not a legitimate governmental practice." . . . We have previously applied these principles and found that "where references to the criminal

defendant's post-*Miranda* silence in both the State's case-in-chief and its closing argument have permeated the trial, the effect is prejudicial so as to deny the defendant the right to a fair trial."

(Emphasis added.) *State v. Jackson*, 2015-Ohio-2473, ¶ 49 (9th Dist.)

**{¶29}** Marshall's argument fails on its premise. Marshall's argument is premised upon his invocation of his right to remain silent. Yet Marshall did not invoke his right to remain silent. The record reflects that a detective read Marshall his *Miranda* rights prior to interviewing him and that Marshall waived those rights. The detective then interviewed Marshall. Thus, testimony that Marshall was uncooperative during the investigation was not a comment on Marshall's Fifth Amendment right to remain silent. *State v. Graham*, 2020-Ohio-6700, ¶ 58 ("testimony that [the defendant] . . . was uncooperative during the interview was not a comment on his Fifth Amendment right to remain silent" because the detective "advised [the defendant] of his *Miranda* rights at the outset of the interview, but [the defendant] did not invoke them."). Marshall's fifth assignment of error is overruled.

ASSIGNMENT OF ERROR VI

> THE TRIAL COURT ERRED FOR PERMITTING THE STATE TO INTRODUCE EVIDENCE INVOLVING OTHER WEAPONS, IN VIOLATION OF THE SUPREME COURT RULING IN STATE V. THOMAS.

**{¶30}** In his sixth assignment of error, Marshall argues that the trial court erred by allowing the State to introduce a picture of Marshall holding a gun that—according to Marshall—was not the gun used in the underlying offense. In support of his argument, Marshall attempts to incorporate his related argument set forth in his third assignment of error regarding his trial court's alleged ineffective assistance for failing to object to the photograph at trial. As previously explained, "Appellate Rules 12(A)(2) and 16(A)(7) require an appellant to set forth a separate argument in support of each assigned error." *McKnight*, 2023-Ohio-1933, at ¶ 10 (9th Dist.). For

this reason, an appellant "cannot 'incorporate the arguments contained in the other assignments of error to support a different assignment of error.'" *Id.*, quoting *Calhoun*, 2021-Ohio-1713, at ¶ 24 (9th Dist.). Accordingly, we decline to address Marshall's undeveloped argument in this regard and will limit our review to the argument set forth in this assignment of error.

{¶31} The record reflects that Marshall's trial counsel did not object to the State's presentation of an Instagram picture of Marshall holding a gun. "When a defendant does not object to the admission of evidence before the trial court, he forfeits all but plain error on appeal." *State v. Yates*, 2020-Ohio-6991, ¶ 24 (9th Dist.). Marshall has not set forth a plain error argument in his appellate brief. "[T]his Court will not undertake a plain error analysis sua sponte when the appellant has failed to assert such an argument in his brief." (Alteration in original.) *Yates* at ¶ 24, quoting *State v. Gray*, 2009-Ohio-3165, ¶ 7 (9th Dist.). Accordingly, we decline to create a plain error argument on Marshall's behalf. Marshall's sixth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

THE TRIAL COURT ERRED IN PERMITTING THE STATE TO BOLSTER THE CREDIBILITY OF THE EVIDENCE PRESENTED AT TRIAL THROUGH THE TESTIMONY OF DETECTIVE GRAUPMAN.

{¶32} In his seventh assignment of error, Marshall asserts that the trial court erred by permitting the State to use a detective's testimony to bolster the testimony of its other witnesses. Marshall's argument is one paragraph long and, with one exception, simply cites to pages of the trial transcript without identifying the specific testimony he claims constituted impermissible bolstering. As previously noted, it "is not the duty of this Court to search the record for evidence to support defendant's argument of an alleged error." *Long*, 2011-Ohio-1050, at ¶ 8 (9th Dist.), quoting *Porter*, 1997 WL 803070, at *4 (9th Dist. Dec. 24, 1997); *accord In re I.T.*, 2016-Ohio-555, at ¶ 13 (9th Dist.). This Court will not create an argument on Marshall's behalf. *In re I.T.* at

¶ 13; *see Bedell*, 2018-Ohio-721, at ¶ 20 (1st Dist.); *Willman*, 2024-Ohio-4879, at ¶ 51, fn. 3 (10th Dist.), quoting *Jones*, 2022-Ohio-583, at ¶ 28.

**{¶33}** The only statement Marshall identifies in his merit brief is a detective's testimony as to "what 'satisfies the rules of evidence.'" The record indicates that defense counsel did not object to the detective's testimony in this regard. As a result, Marshall is limited to arguing plain error on appeal. *Yates*, 2020-Ohio-6991, at ¶ 24 (9th Dist.). Marshall has not set forth a plain error argument in his appellate brief. "[T]his Court will not undertake a plain error analysis sua sponte when the appellant has failed to assert such an argument in his brief." (Alteration in original.) *Id.*, quoting *Gray*, 2009-Ohio-3165, at ¶ 7 (9th Dist.). Accordingly, we decline to create a plain error argument on Marshall's behalf. Marshall's seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR VIII

THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT IN ARGUING SUBSTANTIVE EVIDENCE WHICH WAS NOT INTRODUCED AT TRIAL DURING CLOSING ARGUMENTS, AND SUCH ERROR WAS NOT REPAIRED WITH CURATIVE INSTRUCTION.

**{¶34}** In his eighth assignment of error, Marshall asserts that the State committed prosecutorial misconduct during closing arguments because the prosecutor discussed evidence that was not introduced at trial. Marshall's argument in this regard is one paragraph long, cites two transcript pages, and does not identify the "substantive evidence" he claims was introduced during the State's closing argument. This Court will not create an argument on Marshall's behalf. *Long* at ¶ 8; *accord In re I.T.* at ¶ 13; *see Bedell* at ¶ 20; *Willman* at ¶ 51, fn. 3. Marshall's eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR IX

THE TRIAL COURT ERRED IN PERMITTING INTRODUCTION OF LAW ENFORCEMENT SUMMARY OF EVENTS INTO EVIDENCE.

{¶35} In his ninth assignment of error, Marshall argues that the trial court erred by allowing the State to introduce a summary of events that law enforcement prepared into evidence. The record indicates that defense counsel initially objected to the summary of events but later withdrew his objection after reviewing the exhibit for its accuracy. The trial court admitted the summary of events under Evid.R. 1006.

{¶36} Defense counsel's withdrawal of his objection related to this evidence had the effect of forfeiting all but plain error for purposes of appeal. *State v. Price*, 2015-Ohio-5043, ¶ 8 (9th Dist.) (concluding that the "withdrawal of the objection constitutes a forfeiture of all but plain error" as to the disputed evidence); *State v. Tyler*, 2019-Ohio-4661, ¶ 23 (9th Dist.) (same). Marshall has not argued plain error on appeal, and this Court will not develop a plain error argument on his behalf. *Price* at ¶ 9. Marshall's ninth assignment of error is overruled.

ASSIGNMENT OF ERROR X

THE STATE COMMITTED PROSECUTORIAL MISCONDUCT FOR REPEATEDLY ELICITING TESTIMONY AS TO APPELLANT'S CRIMINAL HISTORY, AND SPECIFICALLY, APPELLANT'S SEXUAL HISTORY, WHERE SUCH WAS SOLELY FOR THE PURPOSE OF CREATING OVERLY PREJUDICIAL IMPACT.

{¶37} In his tenth assignment of error, Marshall argues that the State committed prosecutorial misconduct by repeatedly eliciting testimony as to his criminal and sexual history. Specifically, Marshall argues that the State impermissibly questioned his mother about his prior juvenile delinquency charges for the sole purpose of "painting [him] as a bad person with poor character and judgment." For the following reasons, this Court overrules Marshall's tenth assignment of error.

{¶38} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the

defendant's substantial rights were actually prejudiced." *State v. Haywood*, 2017-Ohio-8299, ¶ 19 (9th Dist.), citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *Haywood* at ¶ 19, quoting *State v. Knight*, 2004-Ohio-1227, ¶ 6 (9th Dist.). "The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him." *State v. Ecker*, 2018-Ohio-940, ¶ 28 (9th Dist.). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *State v. Diar*, 2008-Ohio-6266, ¶ 140. "Thus, '[t]he prosecutor's conduct must be considered in the context of the entire trial.'" (Alteration in original.) *Ecker* at ¶ 28, quoting *State v. Pleban*, 2011-Ohio-3254, ¶ 39 (9th Dist.).

{¶39} Marshall's argument ignores the fact that his defense counsel questioned his mother about his criminal history on direct examination. Marshall's mother testified during her direct examination that Marshall "had a gun and got caught in [her] car with it" "when he was 17-years-old . . . ." Marshall's mother also testified that the police seized Marshall's gun after that incident. Defense counsel presumably elicited this testimony to support the defense's position that Marshall no longer had a gun on the night of J.B.'s death. In other words, Marshall used this prior incident to his advantage in an attempt to establish that he no longer had a gun.

{¶40} On cross-examination, the State questioned Marshall's mother about Marshall's criminal history. The State asked his mother if she was aware that a 14-year-old girl was in the car with Marshall when he was caught with a gun, and that she and Marshall "were getting dressed in the car together" when the police approached them. Defense counsel did not object. Marshall's mother responded that she was not there, and that she only later learned of the incident. The State then moved on with its questioning.

{¶41}    Later, the State asked Marshall's mother whether she was aware that Marshall was convicted of fleeing from the police and obstructing official business in 2021 and receiving stolen property in 2019.  Marshall's mother responded: "[p]ossibly."  According to the State on appeal, the prosecutor was permitted to cross-examine Marshall's mother about his criminal history because she testified as a character witness on behalf of the defense.

{¶42}    Assuming without deciding that the prosecutor's conduct was improper, Marshall has not established that, but for the prosecutor's misconduct, the jury would not have convicted him.  *Ecker*, 2018-Ohio-940, at ¶ 28 (9th Dist.).  The State's cross-examination of Marshall's mother accounts for about 10 pages of an almost 1,800-page transcript.  The State presented evidence indicating that: (1) Savion had fought with Lucas and J.Bl. a few weeks prior and had argued with them earlier in the evening; (2) Savion called Marshall after leaving the gas station, telling him he wanted to "score[;]" (3) Savion arranged for Marshall to pick him up from Savion's girlfriend's house; (4) Marshall contacted J.B. and told her to bring him his black fanny pack, which contained Marshall's gun; (5) Savion, Marshall, and J.B. drove to Lucas's mother's house and either Marshall or Savion fired three gunshots into the Chevy Impala; (6) Lucas returned fire, shooting 13 rounds at the Jeep as it drove down the street; (7) one of those shots struck and killed J.B.; and (8) Marshall lied to the police about where the shooting occurred.  In light of this evidence, Marshall has not established that, but for the prosecutor's alleged misconduct in cross-examining his mother about his criminal history, the jury would not have convicted him.  *See Ecker*, 2018-Ohio-940, at ¶ 28 (9th Dist.).  Accordingly, Marshall's tenth assignment of error is overruled.

## ASSIGNMENT OF ERROR XI

THE TRIAL COURT ERRED IN GIVING ADDITIONAL JURY INSTRUCTION LANGUAGE FROM STATE V. DYKAS, 2010-OHIO-359.

{¶43}    In his eleventh assignment of error, Marshall argues that the trial court erred by permitting the State to include additional language to the definition of proximate cause in the jury instructions.  For the following reasons, this Court disagrees.

{¶44}    As this Court has explained:

"[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." . . . "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." . . . "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." . . . The abuse of discretion standard implies that a trial court acted unreasonably, arbitrarily, or unconscionably. . . . When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court.

*State v. Ross*, 2023-Ohio-1185, ¶ 50 (9th Dist.)

{¶45}    The record reflects that the State requested the trial court to supplement its standard proximate cause instruction with language from this Court's decision in *State v. Colvin* regarding proximate cause in the context of felony murder.  Specifically, the State requested the following language from *Colvin*:

"[D]eath is the 'proximate result' of [a] [d]efendant's conduct in committing the underlying felony offense ... [if it is] a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience." . . . "Under the 'proximate cause theory,' it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. [A][d]efendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the 'proximate result' of Defendant's conduct in committing the underlying felony offense . . . ."

(Alteration in original). *State v. Colvin*, 2012-Ohio-4914, ¶ 13 (9th Dist.).  Defense counsel objected, arguing that the trial court should instruct the jury on the standard proximate cause

definition from OJI. The trial court rejected defense counsel's argument, explaining that "OJI instructions are usually very plain, vanilla, general, and [courts] supplement them if need be . . . ." The trial court determined that the State's requested instruction was appropriate under the facts of the case.

{¶46} Without waiving his objection, defense counsel then asked the trial court to include the "full quotation found in *State v. Dykas*, which *Colvin* does not cite . . . ." (Emphasis added.). Specifically, defense counsel requested the trial court to include the following language from *Dykas* (in italics below), which defense counsel claimed was omitted from *Colvin*:

> [A] Defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the "proximate result" of Defendant's conduct in committing the underlying felony offense; *that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.'"*

*State v. Dykas*, 2010-Ohio-359, ¶ 27 (8th Dist.). The State responded that *Colvin* did include the italicized language from *Dykas*, it just appeared at the beginning of the paragraph instead of at the end of the paragraph. The trial court then indicated that it would supplement its proximate cause instruction with the requested language from *Colvin*.

{¶47} On appeal, Marshall argues that the trial court erred by allowing the State to include the following language:

> A defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the 'proximate result' of the defendant's conduct in committing the underlying felony offense.

Marshall has not argued that the above language was an incorrect statement of the law, that it was inapplicable to the facts of this case, or that reasonable minds could not reach the conclusion sought

by the requested instruction. *See Ross*, 2023-Ohio-1185, at ¶ 50 (9th Dist.). Instead, Marshall summarily asserts that this language was "overly prejudicial and confusing." This Court disagrees.

{¶48} This Court concludes that the trial court did not abuse its discretion by instructing the jury on the definition of proximate cause set forth in this Court's decision in *Colvin*. The challenged language: (1) is a correct statement of the law in the context of felony murder; (2) was applicable to the facts of this case in light of the evidence the State presented in support of the charge for felony murder; and (3) could lead reasonable minds to reach the conclusion sought by the instruction. *Ross* at ¶ 50 (9th Dist.); *see, e.g.*, *Colvin*, 2012-Ohio-4914, at ¶ 13 (9th Dist.) (reflecting that the challenged language is a correct statement of the law); *State v. Foster*, 2025-Ohio-1382, ¶ 32 (10th Dist.) (same); *State v. McGuire*, 2015-Ohio-1887, ¶ 63 (3d Dist.) (same); *State v. Mills*, 2011-Ohio-5793, ¶ 36 (5th Dist.) (same). This Court finds no merit in Marshall's conclusory assertion that the trial court's instruction on proximate cause was "overly prejudicial and confusing." Consequently, Marshall's eleventh assignment of error is overruled.

## ASSIGNMENT OF ERROR XII

THE TRIAL COURT ERRED IN FAILING TO GIVE A LESSER INCLUDED OFFENSE INSTRUCTION TO THE JURY AS TO THE FELONY MURDER CHARGE OF THE INDICTMENT.

{¶49} In his twelfth assignment of error, Marshall asserts that the trial court erred by failing to include a lesser included offense instruction on felonious assault as to the charge of felony murder. This Court disagrees.

{¶50} "This Court reviews a trial court's refusal to give a requested jury instruction for an abuse of discretion." *State v. Robinson-Bey*, 2018-Ohio-5224, ¶ 45 (9th Dist.). An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶51}** As the Ohio Supreme Court has explained, a "criminal defendant is sometimes entitled to a jury instruction that allows the jury to consider convicting the defendant of a lesser included offense as an alternative to convicting for the offense for which the defendant was charged." *State v. Owens*, 2020-Ohio-4616, ¶ 8. "The test for determining whether an instruction on a lesser included offense is warranted is 'where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense.'" *State v. Laughlin*, 2014-Ohio-5417, ¶ 26 (9th Dist.), quoting *State v. Carter,* 89 Ohio St.3d 593, 600 (2000). "In deciding whether to instruct the jury on a lesser-included or inferior-degree offense, the trial court must view the evidence in a light most favorable to the defendant." *Robinson-Bey* at ¶ 44, quoting *State v. Meadows*, 2013-Ohio-4271, ¶ 8 (9th Dist.).

**{¶52}** Here, Marshall was charged with one count of felony murder under R.C. 2903.02(B) with the predicate offense of felonious assault, among other counts. R.C. 2903.02(B) provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree . . . ." This statute "imposes what is in essence strict liability." *State v. Nolan*, 2014-Ohio-4800, ¶ 9.

**{¶53}** At trial, defense counsel argued that felonious assault is a lesser included offense of felony murder and that the trial court should include felonious assault as a lesser included offense of felony murder in its jury instructions. The trial court denied defense counsel's request, explaining:

> I disagree that the lesser included offense instruction is appropriate in this case . . . . [I]f the evidence shows that [Marshall] was complicit in a felonious assault, and we all know that [J.B.] died from it, as long as . . . the jury finds that it was the proximate result of that, those events that led to the felonious assault, then it is a complicity conviction, . . . it's not something different . . . . [I]t does not fit the definition of . . . lesser included offense.

**{¶54}** Even assuming that felonious assault is a lesser included offense of felony murder, the State presented evidence indicating that Marshall (acting as the principal offender or complicit to the actions of Savion) shot three rounds into the Chevy Impala, which prompted Lucas to return fire. The State also presented evidence indicating that one of the 13 rounds Lucas fired at the Jeep struck J.B. in the back, causing her death. Thus, even viewing the evidence in a light most favorable to Marshall, the evidence presented at trial did not reasonably support both an acquittal on felony murder and a conviction on felonious assault related to J.B. *Laughlin*, 2014-Ohio-5417, at ¶ 26. Accordingly, this Court concludes that the trial court did not err by not instructing the jury on a lesser included offense as to the charge of felony murder. Marshall's twelfth assignment of error is overruled.

ASSIGNMENT OF ERROR XIII

> APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT
> OF THE EVIDENCE.

**{¶55}** In his thirteenth assignment of error, Marshall asserts that his convictions are against the manifest weight of the evidence. This Court rejects Marshall's argument outright. Aside from the standard of review, Marshall's argument is five sentences long (two of which are conclusory statements that Marshall's convictions are against the manifest weight of the evidence) and contains no citations to the record or authority in support of his position *See* App.R. 16(A)(7). This Court again notes that the transcript in this case is almost 1,800 pages (containing testimony from over 20 witnesses and dozens of exhibits) and that "it is not the duty of this Court to scour the record for evidence and construct an argument on an appellant's behalf." *In re E.G.*, 2017-Ohio-2584, at ¶ 27 (9th Dist.). This Court declines to address Marshall's undeveloped argument. Marshall's thirteenth assignment of error is overruled.

ASSIGNMENT OF ERROR XIV

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE OFFENSES BEYOND A REASONABLE DOUBT.

{¶56} In his fourteenth assignment of error, Marshall asserts that the State failed to present sufficient evidence in support of his convictions. This Court rejects Marshall's argument outright. Aside from the standard of review, Marshall's argument is three sentences long and contains no citations to the record or authority in support of his position App.R. 16(A)(7). Instead, Marshall simply asserts:

> In the present case, the State failed to present sufficient evidence to sustain a conviction . . . . Here, the State failed to meet its burden of production at trial even when viewing the evidence presented in a light favorable to the State. It is factually and legally insufficient to sustain a conviction.

Again, the transcript in this case is almost 1,800 pages (containing testimony from over 20 witnesses and dozens of exhibits) and "it is not the duty of this Court to scour the record for evidence and construct an argument on an appellant's behalf." *In re E.G.*, 2017-Ohio-2584, at ¶ 27 (9th Dist.). This Court declines to address Marshall's undeveloped argument.[1] Marshall's fourteenth assignment of error is overruled.

ASSIGNMENT OF ERROR XV

THE CUMULATIVE EFFECT OF MULTIPLE ERROR[S] DEPRIVED APPELLANT OF HIS CONSTITUTIONAL[] GUARANTEED RIGHT TO A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITU[T]ION.

---

[1] While this Court declines to construct an argument on Marshall's behalf, this Court questions whether the State presented sufficient evidence to support Marshall's conviction for tampering with evidence related to the gun used to shoot at the Chevy Impala. The State presented evidence indicating that the police never found the gun. During closing arguments, the State argued: "the gun was never found, and as we know, the defendant dropped off Savion . . . at his grandparents' house . . . and [Savion] changed his clothes and probably circumstantially he ditched the gun."

Should Marshall wish to challenge the effectiveness of his appellate counsel, he can do so through a timely application for reopening under App.R. 26(B).

{¶57} In his fifteenth assignment of error, Marshall argues that, even if the individual errors asserted in his other assignments of error are harmless, the cumulative effect of those errors deprived him of a fair trial. This Court disagrees.

{¶58} "Under the doctrine of cumulative error, 'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.'" *State v. Froman*, 2020-Ohio-4523, ¶ 156, quoting *State v. Powell*, 2012-Ohio-2577, ¶ 223. Marshall's argument lacks merit because Marshall failed to establish that he suffered prejudice as a result of any claimed errors that occurred during trial. *Froman* at ¶ 156. Accordingly, Marshall's fifteenth assignment of error is overruled.

III.

{¶59} Marshall's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

KIMBERLY KENDALL CORRAL and GABRIELLE M. PLOPLIS, Attorneys at Law, for Appellant.

MICAH R. AULT, Special Prosecuting Attorney, for Appellee.