[Cite as *State v. Yates*, 2020-Ohio-6991.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

CHARLES YATES

    Appellant

C.A. No.     19AP0061

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2019 CR-B 001062

DECISION AND JOURNAL ENTRY

Dated: December 31, 2020

CARR, Judge.

{¶1}    Appellant, Charles Yates, appeals the judgment of the Wayne County Municipal Court. This Court affirms.

I.

{¶2}    On July 27, 2019, several deputies from the Wayne County Sheriff's Office were dispatched to a Wooster residence after an eleven-year-old boy reported a domestic incident involving his parents. Upon arriving at the scene, the deputies encountered Yates, who was angry and uncooperative. Yates was ultimately placed under arrest. A complaint was filed in the Wayne County Municipal Court charging Yates with one count of domestic violence, one count of obstructing official business, one count of unlawful restraint, and one count of disorderly conduct. Yates pleaded not guilty to the charges at arraignment.

{¶3}    The matter proceeded to a bench trial where Yates was found guilty of domestic violence, obstructing official business, and disorderly conduct. Yates was found not guilty of

unlawful restraint.  The trial court imposed a total jail sentence of 135 days, in addition to $550 in fines.  The trial court further ordered that Yates complete anger management training.

{¶4}    On appeal, Yates raises two assignments of error.  This Court has rearranged Yates' assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR II**

YATES' CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS [A] MATTER OF LAW AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5}    In his second assignment of error, Yates contends that his convictions for domestic violence and obstructing official business were not supported by sufficient evidence and were against the manifest weight of the evidence.  This Court disagrees.

{¶6}    Yates was convicted of domestic violence under R.C. 2919.25(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist.  When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."  R.C. 2901.22(B).

{¶7}    Yates was also convicted of obstructing official business in violation of R.C. 2921.31(A), which states that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public

official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." This Court has recognized that the State must prove that the defendant committed an affirmative act in order to support a conviction for obstructing official business. *State v. Harris*, 9th Dist. Summit No. 27639, 2015-Ohio-5378, ¶ 7; *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 15.

<u>Sufficiency of the Evidence</u>

{¶8} With respect to Yates' conviction for domestic violence, he contends that there was no evidence that he knowingly struck his wife, S.Y. Yates stresses that S.Y. did not testify at trial and that the State's case was predicated entirely on the testimony of the officers. Yates suggests that it is plausible that S.Y. was struck inadvertently, perhaps when he threw the laundry basket against the window.

{¶9} Yates also challenges his conviction for obstructing official business on sufficiency grounds. Yates maintains that merely refusing to provide his name did not constitute the affirmative act necessary to obstruct official business. Yates further maintains that the officers were not hampered or impeded in the performance of their official duties as one of the officers was able to determine Yates' identity by speaking with the alleged victim.

{¶10} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶11} The State presented evidence during its case-in-chief supporting the following narrative. On July 27, 2019, Deputies Karen Long, Benjamin Rubenstein, and Steve Browning responded to a Wooster residence after an 11-year-old boy reported a domestic incident involving his parents. The boy was outside the home when the deputies arrived. Deputy Long testified that the boy, C.Y., was "fearful, tearful, [and] upset." C.Y.'s parents were still in the house when the officers arrived. C.Y. "wanted everything in the house to stop[.]"

{¶12} Deputy Rubenstein heard a male yelling loudly inside the home. Deputy Rubenstein entered the house and escorted Yates outside. Yates expressed anger and physically resisted Deputy Rubenstein by attempting to pull away. During the struggle, Deputy Rubenstein's body camera was knocked off his uniform. Yates called the deputies a number of extremely vulgar names. Yates refused to provide his name to the officers.

{¶13} Deputy Long made contact with S.Y., who was too fearful to answer any questions in front of Yates. When the deputies moved S.Y. back inside the home, S.Y. spoke with the officers, although her hands were still shaking, and she was tearful. During their conversation, Deputy Long ascertained Yates's identity and learned that Yates was the subject of an arrest warrant on an unrelated matter. At that time, Yates was transported to jail. Deputy Rubenstein noticed that S.Y. seemed scared as she was "shaking" and "trembling." Her speech pattern was broken. Though S.Y was excited and nervous, she explained that Yates became upset when their son had failed to mow the lawn. Yates grew angry with S.Y. when he felt that she did not side with him during the dispute. S.Y. told Deputy Rubenstein that Yates struck her in the face and then threw her off the bed. Yates then held S.Y. down with his forearm.

{¶14}   Several photographs were introduced as exhibits at trial.  S.Y. can be seen crying in the photographs.  One photograph depicted S.Y. with red marks on her face near her jaw, the area of her face where she was experiencing pain.  When asked whether S.Y. indicated why she was experiencing pain in that area, Officer Rubenstein testified that S.Y. had indicated that the pain resulted "[f]rom being held by [] Yates['] forearm."   Another photograph showed what appears to be a fresh cut on her pinky toe.  S.Y told Deputy Rubenstein that Yates had thrown a laundry basket at a bedroom window.  A photograph of the broken window was introduced as an exhibit at trial.  S.Y. expressed concern about Yates returning to the residence.

{¶15}   Yates' cannot prevail on his argument that the State did not present sufficient evidence that he knowingly caused physical harm to S.Y.  The State presented evidence that Yates acted out violently when his son failed to mow the lawn.  Yates' actions were not limited to breaking a window.  In the wake of the incident, S.Y. told Deputy Rubenstein that Yates struck her in the face, threw her off the bed, and held her down by pressing his forearm on her face.  This evidence, when construed in the light most favorable to the State, was sufficient to sustain Yates' conviction for domestic violence.

{¶16}   Yates' contention that the State failed to present evidence that he obstructed official business is also without merit.  While Yates suggests that he merely declined to provide the officers with his name, the State presented evidence that Yates physically resisted and attempted to pull away as Deputy Rubenstein escorted him out of the home.  Deputy Rubenstein's body camera became dislodged at that time.  Deputy Rubenstein further struggled with Yates to place him in handcuffs.  Deputy Rubenstein attempted to speak with Yates for approximately five minutes, but Yates was completely uncooperative.  Yates referred to the officers by names such as "b******, mother f******[,] and at one point[,] n******."  Yates' antics hampered the officers and delayed

their ability to investigate the situation. Although Deputy Long was ultimately able to obtain Yates' identity from S.Y., S.Y. was afraid to speak with the officers in front of Yates and S.Y. had to be moved into the house before a productive conversation could take place. This evidence, when construed in the light most favorable to the State, was sufficient to sustain Yates' conviction for obstructing official business.

<u>Weight of the Evidence</u>

{¶17} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶18} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶19} Yates' manifest weight arguments set forth in his merit brief mirror the arguments advanced in support of his sufficiency challenge.

{¶20} Yates called his sister, Clemma Ford, as a witness to testify in his defense at trial. Ms. Ford testified that she was visiting Yates and S.Y. on the date of the alleged incident. During

her testimony, Ms. Ford insisted that she did not see or hear anything that day suggesting that there was an altercation. Ms. Ford further testified that she did not observe any injuries on S.Y. Ms. Ford suggested that she did not speak with the officers when they arrived at the home because she was preparing to go out on a date that evening.

{¶21} A thorough review of the record reveals that Yates' manifest weight challenge is without merit. The State presented evidence that Yates assaulted his wife. The State also presented evidence that Yates physically resisted Deputy Rubenstein, called the officers profane names, and hampered the officers' ability to investigate the 911 call. While Ms. Ford testified that she was at Yates' home on the date of the incident and she was not aware that an altercation occurred, her testimony stands in sharp contrast to the testimony offered by Deputy Rubenstein. The trier of fact is free to believe all, part, or none of the testimony of each witness. *See State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24. This Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible. *See State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances, where the State presented ample evidence to support Yates' convictions, we cannot say that this is the extraordinary case where the trier of fact clearly lost its way.

{¶22} It follows that the second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO INTRODUCE HEARSAY EVIDENCE IN VIOLATION OF [YATES'] SIXTH AMENDMENT RIGHT [TO] CONFRONT HIS ACCUSER.

{¶23} In his first assignment of error, Yates contends that the trial court erred when it permitted the State to introduce testimonial evidence in violation of the Confrontation Clause.

Yates further suggests that the trial court improperly determined that the statements made by S.Y. and C.Y. were admissible as excited utterances. This Court disagrees.

{¶24} At the outset of our discussion, we note that a review of the trial transcript reveals that Yates did not raise a Confrontation Clause objection below. When a defendant does not object to the admission of evidence before the trial court, he forfeits all but plain error on appeal. *See State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 92. Yates has not set forth a plain error argument in his appellate brief. "[T]his Court will not undertake a plain error analysis sua sponte when the appellant has failed to assert such an argument in his brief." *State v. Gray*, 9th Dist. Wayne County No. 08CA0057, 2009-Ohio-3165, ¶ 7. [1] Accordingly, we decline to create a plain error argument on Yates' behalf.

{¶25} Yates further contends that the trial court abused its discretion when it admitted statements about what transpired during the alleged incident on the basis that they were excited utterances. Evid.R. 803(2) provides that excited utterances are not excluded by the hearsay rule. An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id*. A trial court's ruling on the admission of evidence is reviewed for an abuse of discretion. *State v. Frederick*, 9th Dist. Wayne No. 18AP0041, 2019-Ohio-3532, ¶ 13.

{¶26} The State called two witnesses at trial. Deputy Long testified that she arrived on the scene to find C.Y., who was "fearful, tearful, [and] upset." Deputy Long explained that C.Y. was "very nervous" and that he "wanted everything in the house to stop." Deputy Long spoke to S.Y., who identified Yates as her spouse. Deputy Long described S.Y. as "calm" but "afraid to

---

[1] Unlike the circumstances this Court confronted in *State v. Doss*, 9th Dist. Wayne No. 18AP0027, 2019-Ohio-436, ¶ 4-12, where the appellant set forth a separate assignment of error raising plain error, Yates has not argued plain error in the instant appeal.

answer any of our questions in the presence of [] Yates." Deputy Long testified that S.Y. was still nervous and shaking when she was taken back into the trailer. When the assistant prosecutor asked Deputy Long whether S.Y. indicated what had happened, defense counsel raised a hearsay objection and argued that the excited utterance exception was not applicable. The State argued that the excited utterance exception was in fact applicable given S.Y.'s nervous and anxious condition. The trial court then spoke to the parties off the record. When questioning resumed, Deputy Long testified that the officers arrived on the scene within ten minutes of the 911 call. Deputy Long further explained that while S.Y. was more relaxed when she was out of Yates' presence, S.Y. was still shaking and breathing heavily. Deputy Long did not provide additional testimony regarding S.Y.'s account of the incident.

{¶27} Deputy Rubenstein was the second witness to testify on behalf of the State. When Deputy Rubenstein began to describe his short conversation with C.Y. upon arriving at the scene, defense counsel raised a hearsay objection, which was sustained. Deputy Rubenstein then explained that C.Y. was scared, excited, and walking in circles when the deputies arrived. When the State inquired a second time as to C.Y.'s statements to Officer Rubenstein, defense counsel again objected, noting that the State had not established the timeframe between when the incident occurred and when C.Y. made his statements. In response, the trial court asked the State to address this issue in its questioning. Deputy Rubenstein testified that he arrived on the scene within five minutes of being dispatched and that he spoke to C.Y. immediately upon arriving on the scene. Deputy Rubenstein testified that C.Y. was crying and he simply said that he was "tired of this[.]"

{¶28} Deputy Rubenstein spoke to S.Y. approximately five minutes after arriving on the scene, which was roughly ten minutes after receiving the dispatch. Deputy Rubenstein testified that S.Y. was crying, shaking, and that she "seemed scared." Her speech pattern was broken due

to the fact that she was crying. When the State asked Deputy Rubenstein about his conversation with S.Y., defense counsel objected. After a brief conversation off the record, the State's questioning resumed. When defense counsel objected again, the trial court allowed defense counsel to ask several questions of Deputy Rubenstein regarding whether he was contradicting Deputy Long's testimony that S.Y. was "calm" in the wake of the incident. Deputy Rubenstein explained that S.Y. may have displayed calmness when speaking with Deputy Long but that was not his experience as to what transpired after Yates had been transported away from the scene. Specifically, Deputy Rubenstein testified, "I wouldn't describe [S.Y.] as being calm[]" given that she was excited, crying, and nervous. At that point the State's direct examination resumed and Deputy Rubenstein recounted what S.Y. told him about the incident.

{¶29} Under these circumstances, the trial court did not abuse its discretion in admitting the aforementioned testimony. While Yates challenges the admission of statements made by C.Y., we note that there was very little testimony about C.Y.'s statements at the scene. The deputies testified that C.Y. indicated that he was "tired of this" and that he wanted to put a stop to what was going on in this house. When C.Y. met the deputies outside of his home, he was walking in circles in a frantic state. Accordingly, any statements that he made at that time would have qualified as excited utterances under Evid.R. 803(2).

{¶30} S.Y.'s statements about the incident also fall within the hearsay exception set forth in Evid.R. 803(2). While Yates suggests that enough time elapsed between the alleged incident and S.Y.'s statements that Evid.R. 803(2) is not applicable, we remain mindful that "[t]here is no per se amount of time after which a statement can no longer be considered an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be the result of reflective thought." (Emphasis

omitted.) *State v. Hoehn*, 9th Dist. Medina No. 03CA0076-M, 2004-Ohio-1419, ¶ 14, quoting *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993). Deputy Rubenstein testified that S.Y. spoke about the incident approximately ten minutes after the officers were dispatched to the scene. Though Deputy Long used the word "calm" to describe S.Y., Deputy Long also observed that S.Y. was crying and shaking. Deputy Rubenstein explained that S.Y. was still very upset when she made her statement. Indeed, S.Y. remained "excited and crying and nervous[]" as she recounted what Yates had done. Under these circumstances, we cannot say that the trial court's decision to admit S.Y.'s statement as an excited utterance constituted an abuse of discretion.

{¶31} The first assignment of error is overruled.

III.

{¶32} Yates' assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.