[Cite as *State v. Coleman*, 2026-Ohio-1701.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

STATE OF OHIO

    Appellee

v.

BAREON COLEMAN

    Appellant

C.A. No.     2025CA0022-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2024CR0488

DECISION AND JOURNAL ENTRY

Dated: May 11, 2026

FLAGG LANZINGER, Judge.

{¶1} Bareon Coleman appeals from the judgment of the Medina County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} A grand jury indicted Coleman on two counts of burglary in violation of R.C. 2911.12(A)(3). The charges were based upon allegations that Coleman forcibly entered S.G.'s condominium and stole items on July 6, 2024, and July 7, 2024, while S.G. was out of town. Coleman pleaded not guilty and the matter proceeded to a jury trial.

{¶3} Prior to trial, Coleman moved to suppress statements he made at the Medina County Jail to Detective Lubinsky with the City of Brunswick police. The trial court held a suppression hearing, during which the State presented testimony from Detective Lubinsky. Detective Lubinsky explained that he went to the jail to execute a search warrant for Coleman's DNA. After he collected Coleman's DNA, Detective Lubinsky asked Coleman if he wanted to talk about the

burglaries. Detective Lubinsky testified that Coleman agreed to speak with him, that he read Coleman his *Miranda* rights, and that Coleman waived his *Miranda* rights and never requested his attorney to be present. The State played Detective Lubinsky's bodycam video for the trial court, which captured the exchange between Detective Lubinsky and Coleman.

{¶4} After the hearing, the trial court denied Coleman's motion to suppress. In doing so, the trial court acknowledged that Coleman had been indicted at the time Detective Lubinsky spoke with him at the Medina County Jail, that Coleman had retained counsel, and that Coleman's counsel was not present. The trial court determined that Detective Lubinsky advised Coleman of his right to counsel, and that Coleman waived his right to counsel and agreed to speak with him. The trial court noted that, throughout the interview, Coleman continually denied any involvement in the burglaries. The trial court ultimately determined that no constitutional violation occurred.

{¶5} The matter then proceeded to a jury trial. At trial, the State presented testimony from S.G., as well as law enforcement officers who responded to the scene and/or were involved in the investigation. This Court will summarize the testimony of the State's witnesses in turn.

{¶6} According to S.G., she and her boyfriend lived together in her condominium. S.G. testified that, at the time of the underlying events, her boyfriend owned a shoe and clothing store in Cleveland that sold designer apparel. S.G. explained that she and her boyfriend were in the process of moving the store to a new location, so they stored a large amount of inventory in her condominium.

{¶7} S.G. testified that she and her boyfriend went to Florida for vacation on July 2, 2024. S.G. testified that her downstairs neighbor called her on July 7, 2024, and asked her if she came home from vacation early because she heard someone in S.G.'s condominium. S.G. told her

neighbor that she was still in Florida, and her neighbor told her to call the police. S.G. called the police around 12:50 a.m., and the police arrived a short time later.

{¶8} After S.G. called the police, S.G. reviewed her home security camera footage through an app on her phone. S.G. testified that she had a camera on top of a bookcase in her condominium, and that the last motion the camera detected was someone walking up to the camera and turning it face down. S.G. provided the video to the police, and the State played it for the jury at trial. The video displays the date and time as July 6, 2024, at 3:36 a.m., which was the day before S.G.'s neighbor called S.G. to tell her she heard someone in S.G.'s condominium. The video shows someone wearing a hooded sweatshirt and a mask covering the lower half of the person's face walking up to the camera and turning it face down. S.G. identified the person in the video as Coleman, whom she characterized as an acquaintance of her boyfriend. S.G. explained that she was "100 percent certain" the person in the video was Coleman, and that she identified him through the shape of his head and his distinctive eyebrows. S.G. testified that thousands of dollars of designer merchandise, as well as personal items, were stolen from her condominium.

{¶9} On cross-examination, defense counsel questioned S.G. about empty gun cases found in her condominium, as well as her boyfriend's potential involvement in drug-related activity. Additionally, S.G. acknowledged on cross-examination that the security video from inside her condominium showed two individuals, but that she could only identify Coleman.

{¶10} Officer Zubko with the City of Brunswick police testified that he responded to S.G.'s condominium on July 7, 2024. Officer Zubko described the inside of the condominium as disheveled and explained that no one was inside the condominium when the police arrived. Officer Zubko explained that the sliding glass door that opened onto the second-story balcony appeared to

have been forced open, and that he believed that was the point of entry for whomever entered S.G.'s condominium.

{¶11} Sergeant Ceccacci with the City of Brunswick police testified as to the Flock camera system installed throughout the City of Brunswick. Sergeant Ceccacci testified that there are ten Flock cameras mounted throughout the city that photograph vehicles travelling in and out of the city. Sergeant Ceccacci testified that the police use the Flock camera system for crime investigations, and that he used it to search for Coleman's vehicle around the times of the burglaries on July 6, 2024, and July 7, 2024. In summary, Sergeant Ceccacci testified that Coleman's vehicle was captured travelling in, and then out, of the city around the times of the burglaries on July 6, 2024, and July 7, 2024.

{¶12} Detective Lubinsky testified as to the surveillance footage the police obtained from the outside of S.G.'s condominium. Detective Lubinsky explained that he met with a maintenance person at the condominium complex, who allowed him to access the complex's outdoor security camera footage. Detective Lubinsky testified that he was unable to download the surveillance footage onto a flash drive, so he used his department-issued cell phone to take a video of the footage as it played on a screen. Detective Lubinsky testified that the surveillance footage showed two unidentified individuals coming and going from the condominium complex around the times of the two burglaries. The State played Detective Lubinsky's video of the surveillance footage for the jury.

{¶13} Detective Lubinsky also testified as to the cell phone location data and call logs obtained from Coleman's phone. Detective Lubinsky testified that the police received this information in response to a subpoena issued to T-Mobile. Detective Lubinsky used the cell phone location data and call logs to create a timeline of events that showed the pattern of movement of

Coleman's cell phone around the times of the burglaries. In summary, Detective Lubinsky testified that the cell phone location data reflected that Coleman's cell phone was near S.G.'s condominium during the timeframe of both burglaries.

{¶14} Detective Lubinsky further testified as to his interview with Coleman at the Medina County Jail. The State played Detective Lubinsky's bodycam video from that interview, which the jury indicated it could not hear well. The State played and replayed portions of the video, stopping frequently to allow Detective Lubinsky to explain what he understood Coleman to be saying in the video. Detective Lubinsky explained that Coleman denied any involvement with the burglaries and claimed to have been at a local bar at the times of the burglaries.

{¶15} Lastly, the State presented testimony from Detective Girard with the Medina County Sheriff's Office. Detective Girard also testified as to the cell phone location data and call logs obtained from Coleman's cell phone. Detective Gerard testified that he "cop[ied] and past[ed]" the information received from T-Mobile into a software program called CellHawk. Detective Gerard explained that he used the CellHawk software to create a visual representation of the calls and location data on Coleman's cell phone around the times of the burglaries. The State played the video Detective Girard created using the CellHawk software for the jury.

{¶16} The defense presented no witnesses. The jury found Coleman guilty of both counts of burglary. The trial court sentenced Coleman to 18 months in prison on one of the counts of burglary, and 30 months in prison on the other count. The trial court ordered the sentences to run consecutively. Coleman now appeals, raising five assignments of error for this Court's review.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN FAILING TO SUPPRESS STATEMENTS MADE BY THE DEFENDANT IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENT.**

{¶17} In his first assignment of error, Coleman asserts that the trial court erred by failing to suppress the statements he made to Detective Lubinsky at the Medina County Jail. For the following reasons, this Court overrules Coleman's first assignment of error.

{¶18} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997). Accordingly, this Court grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶19} "When a suspect in a criminal investigation requests counsel, police questioning must cease until a lawyer is provided or the suspect reinitiates the interrogation." *State v. Huguley*, 2017-Ohio-8300, ¶ 9 (9th Dist.). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." (Alterations sic.) *Id.*, quoting *Davis v. United States*, 512 U.S. 452, 459 (1994). "Courts have found that a suspect asking questions about counsel does not amount to an unequivocal request for counsel. *Huguley* at ¶ 9. A defendant may

waive his right to counsel even if he is already represented by counsel "so long as relinquishment of the right is voluntary, knowing, and intelligent." *State v. Taylor*, 2024-Ohio-1752, ¶ 24, quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

{¶20} As noted, Coleman moved to suppress statements he made to Detective Lubinsky at the Medina County Jail. The trial court held a suppression hearing, during which Detective Lubinsky testified that Coleman agreed to speak with him, that he read Coleman his *Miranda* rights, and that Coleman waived his *Miranda* rights and never requested his attorney to be present. The State played Detective Lubinsky's bodycam video for the trial court, which captured the exchange between Detective Lubinsky and Coleman.

{¶21} The trial court denied Coleman's motion to suppress, finding that Detective Lubinsky advised Coleman of his right to counsel, and that Coleman waived his right to counsel and agreed to speak with him. The trial court noted that, throughout the interview, Coleman continually denied any involvement in the burglaries. The trial court ultimately determined that no constitutional violation occurred.

{¶22} This Court's review of the bodycam video of Detective Lubinsky's interview with Coleman at the Medina County Jail indicates that the trial court's factual findings are supported by competent, credible evidence. *See Burnside*, 2003-Ohio-5372, at ¶ 8. The video indicates that Detective Lubinsky read Coleman his *Miranda* rights, and that Coleman waived those rights and agreed to speak with him. At no point during the interview did Coleman unequivocally request his counsel. *See Huguley*, 2017-Ohio-8300, at ¶ 9 (9th Dist.). Instead, Coleman simply mentioned his attorney when Detective Lubinsky asked Coleman for his aunt's name. Coleman responded that he was not sure if his attorney would want him to share his aunt's information. Detective Lubinsky responded that he understood and reiterated that Coleman had the right to have an

attorney present. The interview then continued without Coleman requesting his counsel to be present. Throughout the interview, Coleman denied any involvement with the burglaries and claimed he was at a local bar both evenings. Based upon these facts, this Court cannot say that the trial court erred by denying Coleman's motion to suppress on the basis that no constitutional violation occurred. *See Burnside* at ¶ 8.

{¶23} Even if the trial court had erred by denying Coleman's motion to suppress, Coleman has not identified on appeal which statements the trial court should have suppressed, nor has he explained how the admission of any statements affected the outcome of the trial. *See State v. Robertson*, 2024-Ohio-2848, ¶ 54 (9th Dist.), citing App.R. 16(A)(7) and Crim.R. 52(A). Consequently, Coleman has not established reversible error on appeal. *Robertson* at ¶ 54. Coleman's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN PERMITTING HEARSAY TESTIMONY OF DETECTIVE DAREN LUBINSKY ON CELL-[L]ITE LOCATION DATA WITHOUT PROPER AUTHENTICATION IN VIOLATION OF THE CONFRONTATION CLAUSE.**

{¶24} In his second assignment of error, Coleman asserts that the trial court erred by allowing Detective Lubinsky to testify as to cell phone location data without proper authentication under Evid.R. 901(A). This Court rejects Coleman's assignment of error outright because Coleman did not object to Detective Lubinsky's testimony regarding the cell phone location data at trial, nor has he argued plain error on appeal. *See State v. Moorer*, 2016-Ohio-7679, ¶ 11 (9th Dist.); *State v. Singer*, 2023-Ohio-2636, ¶ 26 (9th Dist.). This Court will not construct a plain error argument on Coleman's behalf. *Singer* at ¶ 26. Coleman's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO IMPROPER INTERPRETATION OF APPELLANT'S INTERVIEW BY DETECTIVE DAREN LUBINSKY IN VIOLATION OF THE SIXTH AMENDMENT RIGHT TO COUNSEL AND DUE PROCESS PROTECTIONS.**

{¶25} In his third assignment of error, Coleman argues that his trial counsel rendered ineffective assistance by failing to object to Detective Lubinsky's testimony as to what Coleman was saying in the bodycam video of Detective Lubinsky's interview with him at the Medina County Jail. For the following reasons, this Court overrules Coleman's third assignment of error.

{¶26} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Coleman must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Coleman must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 2017-Ohio-8847, ¶ 27 (9th Dist.).

{¶27} As noted, the State played the bodycam video of Detective Lubinsky's interview with Coleman for the jury during Detective Lubinsky's testimony. The record reflects that the jury had difficulty hearing the audio of the video, so the State played and replayed portions of the

video, frequently stopping to ask Detective Lubinsky what he understood Coleman to be saying at certain points. Defense counsel agreed to this approach at trial, stating:

> Play it and if there's something inaudible, let the jurors signal that they have to have it replayed. If they still can't hear, ask the detective what he understood [Coleman] to say.

{¶28} Coleman argues on appeal that it was the jury's duty to determine what he was saying in the video, and that his trial counsel should have objected to Detective Lubinsky's interpretation of his statements in the video. For the following reasons, this Court concludes that Coleman has failed to demonstrate that his trial counsel rendered ineffective assistance.

{¶29} "[A]s a matter of law, the failure to object to an error at trial may be justified as a trial tactic and thus does not sustain a claim of ineffective assistance of counsel." (Alteration in original.) *State v. Granakis*, 2017-Ohio-8428, ¶ 29 (9th Dist.), quoting *State v. Miller*, 2007-Ohio-370, ¶ 10 (9th Dist.). "Strategic trial decisions are left to the deference of trial counsel and are not to be second-guessed by appellate courts." *Granakis* at ¶ 29, quoting *Miller* at ¶ 10.

{¶30} Here, Coleman's trial counsel may have strategically decided not to object to Detective Lubinsky's testimony regarding what Coleman said in the recorded interview because it allowed the jury to hear that Coleman repeatedly denied any involvement in the burglaries, and that Coleman claimed to have been at a local bar during both burglaries. Additionally, the Ohio Supreme Court has acknowledged that, if an audio recording is unclear, then an officer who was present during the recording can testify as to the contents of the recording. *See State v. Coleman*, 85 Ohio St.3d 129, 141 (1999); *accord State v. Heineman*, 2016-Ohio-3058, ¶ 67 (8th Dist.), quoting *State v. Warmus,* 2011-Ohio-5827, ¶ 26 (8th Dist.) (providing that a "person who was present and who heard the conversation in question at the time the recording was made may testify for the purpose of clarifying inaudible or unintelligible portions of the tape."). In doing so, the

Ohio Supreme Court noted that a defendant can cross-examine that officer and offer the defendant's version of any inaudible portion of the recording. *Coleman* at 141. Consequently, Coleman has not established that his trial counsel rendered a deficient performance by not objecting to Detective Lubinsky's testimony in this regard. *See Strickland*, 466 U.S. at 687.

{¶31} Because Coleman has not established that his trial counsel rendered a deficient performance, this Court need not address the prejudice prong of the *Strickland* test. *Carter*, 2017-Ohio-8847, at ¶ 27 (9th Dist.). Coleman's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN PERMITTING INTRODUCTION OF VIDEO EVIDENCE BY THE STATE WHICH WAS IN VIOLATION OF EVIDENCE RULE 1002'S ORIGINAL REQUIREMENT.**

{¶32} In his fourth assignment of error, Coleman asserts that the trial court erred by allowing the State to present Detective Lubinsky's video of the surveillance footage from the outside of S.G.'s condominium, in violation of Evid.R. 1002. For the following reasons, this Court overrules Coleman's fourth assignment of error.

{¶33} As noted, Detective Lubinsky testified as to the surveillance footage the police obtained from the outside of S.G.'s condominium. Detective Lubinsky explained that he was unable to download the surveillance footage, so he used his department-issued cell phone to take a video of the footage. The State played the video Detective Lubinsky took on his department-issued cell phone of the surveillance footage for the jury.

{¶34} The record reflects that Coleman did not object to the State's use of Detective Lubinsky's video at trial. "When a defendant does not object to the admission of evidence before the trial court, he forfeits all but plain error on appeal." *State v. Marshall*, 2025-Ohio-2283, ¶ 31 (9th Dist.), quoting *State v. Yates*, 2020-Ohio-6991, ¶ 24 (9th Dist.); *State v. Perenkovich*, 2025-

Ohio-521, ¶ 38 (5th Dist.). Coleman has not set forth a plain error argument in his appellate brief, and this Court will not construct one on his behalf. *Yates* at ¶ 24, quoting *State v. Gray*, 2009-Ohio-3165, ¶ 7 (9th Dist.). Consequently, Coleman's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**APPELLANT[']S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF EVIDENCE.**

{¶35} In his fifth assignment of error, Coleman argues that his convictions are against the manifest weight of the evidence. For the following reasons, this Court disagrees.

{¶36} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's version of the events." *State v. Harris*, 2024-Ohio-196, ¶ 19 (9th Dist.).

{¶37} Coleman argues that his convictions are against the manifest weight of the evidence because the State presented evidence that was unreliable, improperly admitted, and lacked credibility. In support of his argument, Coleman points to: (1) S.G.'s testimony that she could identify him by his distinctive eyebrows; (2) the State's use of Detective Lubinsky's video of the surveillance footage from the outside of S.G.'s condominium; (3) the fact that Detective Lubinsky interviewed him at the Medina County Jail without his counsel present; and (4) the State's introduction of "unauthenticated" cell phone location data.

{¶38} As discussed in the preceding assignments of error, Coleman failed to establish any error with respect to Detective Lubinsky's video of the surveillance footage from the outside of S.G.'s condominium, Detective Lubinsky's interview with him at the Medina County Jail, and the State's use of cell phone location data. Consequently, Coleman's characterization of that evidence as improperly admitted lacks merit and does not support his challenge to the manifest weight of the evidence.

{¶39} To the extent Coleman challenges the credibility of S.G.'s testimony identifying him as the person seen on the video inside her condominium, the jury was in the best position to evaluate S.G.'s credibility. *State v. Petersen*, 2025-Ohio-877, ¶ 32 (9th Dist.) ("The jury, as the trier of fact, was in the best position to evaluate the credibility of the testimony and evidence and was free to believe the State's evidence."). The fact that the jury chose to believe the State's witnesses and the State's version of the events does not render Coleman's convictions against the manifest weight of the evidence. *State v. Calhoun*, 2021-Ohio-1713, ¶ 25 (9th Dist.) ("[A] conviction is not against the manifest weight of the evidence simply because the jury chose to believe the State's version of the events."). Having reviewed the entire record, this Court cannot say that this is the exceptional case in which the evidence weighs heavily against Coleman's convictions. *See Croghan*, 2019-Ohio-3970, at ¶ 26 (9th Dist.).

{¶40} Coleman's fifth assignment of error is overruled.

III.

{¶41} Coleman's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                           _____

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

KIMBERLY KENDALL CORRAL and GABRIELLE M. PLOPLIS, Attorneys at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.